RENDERED: SEPTEMBER 22, 2011
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2007-SC-000511-DG

PATRICIA GREENE, THELMA CORNELIUS,                     APPELLANTS
SANDY WOOD JOHNSON, ANNA PERKINS,
DEAN WOOD, DOROTHY WOOD,
LORELLA WOOD AND JOHN C. WOOD


ON REVIEW FROM COURT OF APPEALS
V.              CASE NO. 2006-CA-000683-MR
FRANKLIN CIRCUIT COURT NO. 04-CI-00353


COMMONWEALTH OF KENTUCKY,                              APPELLEES
ADMINISTRATIVE OFFICE OF THE COURTS;
HONORABLE JERRY WINCHESTER, JUDGE
OF MCCREARY CIRCUIT COURT;
CHARLES E. KING; AND KENTUCKY BOARD OF CLAIMS


**AND**

## 2008-SC-000783-DG


COMMONWEALTH OF KENTUCKY,                       CROSS-APPELLANT
ADMINISTRATIVE OFFICE OF THE COURTS


ON REVIEW FROM COURT OF APPEALS
V.              CASE NO. 2006-CA-000683-MR
FRANKLIN CIRCUIT COURT NO. 04-CI-00353


PATRICIA GREENE, THELMA CORNELIUS,            CROSS-APPELLEES
SANDY WOOD JOHNSON, ANNA PERKINS,
DEAN WOOD, DOROTHY WOOD,
LORELLA WOOD, JOHN C. WOOD,
HONORABLE JERRY WINCHESTER, JUDGE
OF MCCREARY CIRCUIT COURT;
CHARLES E. KING; AND KENTUCKY BOARD OF CLAIMS

**OPINION OF THE COURT BY SPECIAL JUSTICE RHOADS**

**REVERSING**

This action is before the Court on discretionary review of whether the Board of Claims had jurisdiction over the Appellants' claims brought against Appellees pursuant to the Kentucky Board of Claims Act, KRS 44.070, *et. seq.* Appellants consist of a group of heirs who were entitled to receive the net proceeds of a judicial sale of four tracts of land previously owned by John and Zola Wood. For reasons explained hereafter, the net proceeds of the judicial sale were never distributed to Appellants, resulting in the Appellants filing claims against Appellees in the Board of Claims. Appellees are (i) Charles E. King, former master commissioner of the McCreary Circuit Court ("King"); (ii) Circuit Judge Jerry Winchester of the McCreary Circuit Court ("Judge Winchester"); and (iii) Kentucky's Administrative Office of the Courts (the "AOC").

The Board of Claims (the "Board") entered a final order dismissing Appellants' claims for lack of jurisdiction. The Franklin Circuit Court and the Court of Appeals affirmed. This Court now reverses for the reasons set forth in this opinion.

## I.     Background

On May 11, 1987, Judge Winchester appointed King as the master commissioner for McCreary County pursuant to KRS 31A.010. A master commissioner serves at the pleasure of the circuit judge, except that no term of appointment shall exceed four years without reappointment by the circuit

2

judge. KRS 31A.010(3)(a). KRS 31A.020 requires that the master commissioner execute a bond with surety approved by the court (i.e., the circuit judge). In this case, at the time of Judge Winchester's appointment of King, Judge Winchester ordered that King execute a bond in the amount of $25,000.00, which King did.

At the end of the four-year term, Judge Winchester did not reappoint King as master commissioner, nor did he appoint anyone else to the office. Nevertheless, King continued to act as, and was treated by Judge Winchester as the master commissioner for the ensuing period of more than ten years. In essence, King was acting as the *de facto* master commissioner for McCreary County when the events which gave rise to this matter transpired.

On August 19, 2002, Judge Winchester, in the course of a proceeding before the McCreary Circuit Court, ordered King, as master commissioner, to conduct a judicial sale of four tracts of land so that the proceeds could be distributed among the Appellants. King proceeded to sell the property at auction on September 21, 2002 for $234,600. King's Report of Sale dated October 11, 2002, was approved and confirmed by the McCreary Circuit Court on October 22, 2002. The court, on January 2, 2003, approved an itemization of disbursements, which included administrative fees and costs, the amounts due to the respective heirs. The court's order also directed King to distribute the proceeds of the sale in accordance with the itemization. King did not comply, and therefore, the court ordered King to make an immediate

distribution of the proceeds by an order entered on January 21, 2003. King, however, never made any disbursement.

As a result of King's failure to disburse the proceeds pursuant to his orders, Judge Winchester ordered an accounting of King's funds. An investigation revealed that "[w]hile acting as Master Commissioner for McCreary Circuit Court, King misappropriated the proceeds from numerous separate sales by transferring funds from the Master Commissioner's account to his own personal account instead of to the rightful beneficiaries. The aggregate value of the misappropriated funds exceeded $300,000." *King v. Kentucky Bar Ass'n*, 162 S.W.3d 462, 462 (Ky. 2005).

King's wrongs were not without additional consequences. Numerous criminal charges were filed against him, and in 2005, he pleaded guilty to 132 counts of theft by failure to make required disposition of property valued at over $300. This, in turn, led this Court to permanently disbar King later that same year. *Id.*

In the interim, Appellants each filed substantially identical claims with the Board of Claims naming King and Judge Winchester as the state actors, and the AOC as the state agency on August 11, 2003.[1] The Board of Claims consolidated the claims into a single action by an order entered on October 16, 2003.

---

[1] The ultimate fate of the funds misappropriated by King is not clear from the record. The claims filed by Appellants at the Board of Claims state that "[i]t appears that the funds are no longer available." Presumably, the funds have been dissipated.

## A.    Allegations Regarding the AOC at the Board of Claims Level

Appellants and Appellees have made various allegations regarding the designation of King and Judge Winchester as employees of the AOC. Although the Court does not consider the resolution of this appeal to turn upon which party either first or more emphatically asserted that King and Judge Winchester were employees of the AOC, the Court briefly sifts through the competing allegations because the parties expend considerable effort in arguing the point. Further, some discussion of the issue may clarify the principles which *are* dispositive of this appeal.

Appellants assert that their claims "were filed against the Commonwealth based on its waiver of immunity through the Board of Claims Act for King's and Judge Winchester's failure to perform the duties of their *official capacities*." (Emphasis added.) The claim forms submitted by Appellants, which they maintain were provided to them by the Board, included a section designated "Name of State Agency involved with the incident (employee's name, if known)." Appellants, in their completion of the form, stated:

> *Administrative Office of the Court* [sic]
> 1) Charles E. King former Master Commissioner of the McCreary Circuit Court
> 2) Judge Jerry Winchester of the McCreary Circuit Court

(Emphasis added.)

Appellants point to the Board's responses to the claims on September 15, 2003, which stated that "[a] copy of your claim and all of the information you have provided the Board is being forwarded to the Administrative Office of the Courts." The record establishes that the Board directed a letter to the AOC on

5

that same date assigning the claim to the AOC, with the Board directing that "[y]our agency shall file its answer with the board and shall submit a copy of the answer to the claimant." AOC answered the consolidated claims of the heirs on October 10, 2003.

For its part, the AOC argues that various statements identified in its own filings were merely recognitions of the *Appellants'* filings and that "[t]he suggestion that King and Winchester were employed by AOC originated entirely from the Appellants, not from AOC." Appellants retort that, as an example of the AOC's acknowledgement that it was the employer of King and Judge Winchester, the AOC, in its Answer, pleaded that "this pleading is filed on behalf of [Judge Winchester and King] and their state employer, AOC."

It should suffice to say that both parties have made allegations in claim forms or pleadings which allege explicitly or implicitly that the AOC is the employer of King and Judge Winchester. Regardless, the Court does not consider these arguments to contribute toward its decision of this case. For the reasons stated hereafter, the Court looks to the Kentucky Constitution and relevant statutes for its determination regarding whether Judge Winchester is an employee of the AOC, and finds that the factual circumstances of the case make a decision on this point regarding King moot and unnecessary.

## B.  The Board of Claims Decision

The AOC, after filing its answer with the Board of Claims, moved the Board to grant summary judgment, arguing that the Appellants had failed to state a claim for which relief could be granted. The AOC's failure-to-state-a-

6

claim argument was that the judge's failure to reappoint the master commissioner could not have caused the injury complained of and that the judge had no obligation to ensure that the master commissioner's bond was sufficient to cover the complete value of all properties that he sold. The AOC, in its argument based upon jurisdiction, contended that King, Judge Winchester, and the AOC were all engaged in judicial or quasi-judicial functions for which no liability can exist because such functions are entitled to absolute immunity.

The Board granted the AOC's motion for summary judgment, stating that the Appellants' claims were "dismissed for failure to state a claim upon which relief can be granted within the Board of Claims Act at KRS Chapter 44. Therefore, the Board of Claims lacks jurisdiction in this matter." The Board's order was summary, consisting almost entirely of the language quoted here and without substantive explanation for its holding that there was no jurisdiction.

**C.     The Appeal to and Decision of the Franklin Circuit Court**

The Appellants sought review in the Franklin Circuit Court which affirmed the decision of the Board of Claims. The circuit court noted that, in *Horn by Horn v. Commonwealth*, 916 S.W.2d 173 (Ky. 1996), although the AOC was found to be subject to suit in the Board of Claims, its court-designated worker was entitled to quasi-judicial immunity because she was "acting within the scope of her employment and under the direction of a judge of the court." *Id.* at 176. The circuit court stated that "Winchester is a court-designated

worker, thus both King and AOC are entitled to immunity."[2] The circuit court held that Judge Winchester was "also" entitled to judicial immunity for his failure to reappoint the master commissioner and to set a sufficient bond because those were judicial acts for which he had immunity under *Vaughn v. Webb*, 911 S.W.2d 273 (Ky. App. 1995).

### D. The Appeal to and Decision of the Court of Appeals

The Appellants appealed the decision of the Franklin Circuit Court to the Court of Appeals, which affirmed. The Court of Appeals' decision was, however, at some variance with the decision of the Franklin Circuit Court. As noted, the Franklin Circuit Court had held that quasi-judicial immunity barred the defendants from being subject to suit in the Board of Claims. The Court of Appeals *observed* that the circuit court had "cited judicial immunity as its basis for upholding the dismissal of appellants' claims." The Court of Appeals, however, held that the dismissal of the suit in the Board of Claims "was required for the more fundamental reason that neither Judge Winchester nor King can be considered employees of AOC." The Court of Appeals stated that, while *Horn* established that the Board of Claims Act encompassed the AOC, the individual at issue in *Horn* was an employee of the AOC, whereas King and Judge Winchester were not.

---

[2] The circuit court's reference to Judge Winchester as a "court-designated worker," has every indication of being a transcription error, since the court-designated worker analogy, to any extent that it can be applied to this case, would almost certainly apply to the master commissioner. This appears to have been the circuit court's intent, as it went on to separately state that Judge Winchester "also" had immunity in the following paragraphs.

8

The Court of Appeals also drew a distinction between sovereign immunity and judicial immunity. The court stated that the Board of Claims Act effected a limited waiver of sovereign immunity, but that the Act did not effect any waiver of the "entirely distinct" concept of judicial immunity. The court concluded that "because of that critical distinction," the judge and master commissioner were not subject to the jurisdiction of the Board of Claims. Lastly, the court commented that the Appellants were not without a remedy because they could pursue a civil claim against King since his criminal acts were outside the scope of his duties as master commissioner, removing any immunity that he might otherwise enjoy.

This Court subsequently accepted discretionary review to determine whether the Board of Claims properly dismissed the Appellants' action for lack of jurisdiction.

## II.    Analysis

The Appellants raise a number of arguments in support of their appeal. Each of Appellants' arguments is grounded in their basic position that their claims were properly brought in the Board of Claims. In support of this argument, Appellants contend that (i) the issue of whether King and Winchester were employees of the AOC cannot be raised for the first time on appeal; (ii) Appellants filed their claims in accordance with the pertinent statutes and regulations; (iii) the AOC is the proper entity to defend negligence claims against a judge and master commissioner in the Board of Claims; and (iv) even if King and Judge Winchester are not employees of the AOC, they are

9

"officers, agents, or employees of the Commonwealth" and, therefore, are amenable to suits for negligence in the Board of Claims. Appellants also argue that neither King nor Judge Winchester are protected by judicial or quasi-judicial immunity from suit in the Board of Claims because Appellants' claims are founded in negligence in the performance of ministerial duties for which sovereign immunity has been waived by the Board of Claims Act.

The AOC's response primarily consists of the argument that the circuit judge and master commissioner are not employees of the AOC. The AOC, however, also cross-appealed and argues alternative grounds to affirm. The AOC's arguments include that to allow the Board of Claims jurisdiction over claims of negligence against circuit judges or any component of the Court of Justice (of which circuit courts are a part) would violate the doctrine of the separation of powers. The AOC also argues that the waiver of sovereign immunity in the Board of Claims Act is ambiguous as to whether such waiver extends to include the AOC. The AOC argues that Appellants failed to state a claim that can be proven against the AOC. And, finally, the AOC argues that the Appellants' allegations include only intentional acts, not negligence, for which sovereign immunity has been waived, and thus, there is no jurisdiction in the Board of Claims.

The Board of Claims' decision did not include any findings of fact, but rather dismissed the Appellants' claims for failure to state a claim and lack of jurisdiction. Under these circumstances, this Court's review primarily involves the interpretation of sections of the Constitution and statutes. Therefore, this

10

Court applies the *de novo* standard of review in deciding this appeal. *Devasier v. James*, 278 S.W.3d 625, 631 (Ky. 2009)

## A.    Sovereign Immunity and the Board of Claims Act

Sovereign immunity is a concept that arose from the common law of England and was embraced by our courts at an early stage in our nation's history. *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001); *Reyes v. Hardin Memorial Hospital*, 55 S.W.3d 337 (Ky. 2001). Sovereign immunity is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity. *Yanero*, 65 S.W.3d at 517; *Alden v. Maine*, 527 U.S. 706, 746 (1999). The principle of sovereign immunity was recognized as applicable to the Commonwealth of Kentucky as early as 1828. *Yanero*, 65 S.W.3d at 517–18 (citing *Divine v. Harvie*, 23 Ky. (7 T.B. Mon.) 439, 441 (1828)). "The absolute immunity afforded to the state also extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief is sought." *Id.* at 518 (citing *Alden v. Maine*, 527 U.S. 706, 756 (1999), and other authorities).

> The rationale for absolute immunity for the performance of legislative, judicial and prosecutorial functions is not to protect those individuals from liability for their own unjustifiable conduct, but to protect their offices against the deterrent effect of a threat of suit alleging improper motives where there has been no more than a mistake or a disagreement on the part of the complaining party with the decision made.

*Id.*

The Kentucky Constitution, section 231, provides, however, that "[t]he General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." The General Assembly, acting pursuant to section 231 of the Constitution, enacted the Board of Claims Act, KRS 44.070, *et. seq.,* (the "Act"). KRS 44.070(1) established the Board of Claims and vested the Board with authority to hear claims and award damages, subject to certain limitations, incurred as the "proximate result of negligence on the part of the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies." KRS 44.070(1) further provides that the Board of Claims shall be "independent of all agencies, cabinets, and departments of the Commonwealth except as provided in KRS 44.070 to 44.160."

In 1986, the General Assembly passed amendments to the Act which "clarified the law with regard to what types of conduct may form the basis for recovery under the Act." *Collins v. Commonwealth Nat. Resources and Env. Prot. Cabinet,* 10 S.W.3d 122, 125 (Ky. 1999). Among the amendments, KRS 44.073(2) stated:

> The board of claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of *ministerial* acts against the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any officers, agents, or employees thereof while acting within the scope of their employment by the Commonwealth, or any of its cabinets, departments, bureaus, or agencies.

(Emphasis added.) The Court in *Collins* stated, in regard to KRS 44.073(2):

> This provision clearly establishes that any negligence claims against the Commonwealth or its subdivisions must be for the negligent performance of "ministerial acts." By implication, the negligent performance of non-ministerial, i.e., discretionary acts, cannot be a basis for recovery under the Act.

10 S.W.3d at 125.

In *Yanero v Davis*, the Court's opinion included certain statements which provide guidance in the case presently before the Court.[3] The Court, in addressing governmental immunity, stated "'[g]overnmental immunity' is the public policy, derived from the traditional doctrine of sovereign immunity, that limits imposition of tort liability on a government agency." *Id.* at 519. In its analysis, the Court included a footnote that is important to the present case. The footnote states:

> The principle discussed here should not be confused with the discretionary/ministerial function analysis that is applied in determining when a claimant can recover damages in the Board of Claims against the Commonwealth or one of its agencies for the negligent performance of a governmental function. KRS 44.073(2); *Collins v. Commonwealth Nat. Resources and Env. Prot. Cabinet,* Ky., 10 S.W.3d 122 (1999).

*Id.* at 531.

The Court in *Yanero,* in addressing official immunity, stated: "'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It

---

[3] *Yanero* was a civil case, not a Board of Claims case. The Court in *Yanero* was considering the "discretionary versus ministerial" question in connection with its determination of whether certain defendants had qualified official immunity as, for such immunity to apply, the official's act must be discretionary. *Id.* at 521–22.

rests not on the status or title of the officer or employee, but on the function performed." *Id.* at 521. The Court continued: "Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity ...." *Id.* at 521–22. This is the category into which Judge Winchester fits. He is a state officer and would have absolute judicial immunity for his judicial acts in a suit in civil court. However, in the instant case, Appellants' claims were filed in the Board of Claims.[4]

The Court, in proceeding to analyze the Board of Claims Act, stated in *Yanero* that to the extent that KRS 44.073(2) "purports to waive immunity for the performance of ministerial acts, it is a nullity; for public agents and employees are not vested with immunity for the negligent performance of their ministerial functions." *Id.* at 524.[5] The Court further stated that to the extent the Act would transfer jurisdiction of non-immune agencies, officers, and employees from the circuit court to the Board of Claims, it would be unconstitutional for a number of reasons. *Id.* at 525.[6] The Court concluded that to abide by the principle that statutes should be construed as

---

[4] Appellants state that their claims "were filed against the Commonwealth based upon its waiver of immunity through the Board of Claims Act for King's and Judge Winchester's failure to perform the duties of their *official capacities.*"

[5] The Court, in *Yanero*, did not seem to appreciate that KRS 44.073(2) was not a nullity, but was part of an Act that allowed vicarious liability for the Commonwealth for the ministerial acts of its officers and employees as the Court recognized two years later in *Williams v. Kentucky Department of Education*, 113 S.W.3d 145 (Ky. 2003).

[6] Likewise, the amendments to the Act did not transfer claims against state officers or employees in their individual capacities for negligence in the performance of ministerial functions to the Board of Claims. Rather, the Act opened the *state* to suit

constitutional if possible, it would construe the 1986 amendments to the Act as applying only to otherwise immune persons and entities and not to governmental agencies, officers, and employees who were not immune from tort liability (and could be sued in court). *Id.* Finally, the Court made the statement, important to the present action, that, in a civil case, an immune entity cannot be held vicariously liable for any alleged negligence of its employees. *Id.* at 527.

The Court's interpretation and application of the Board of Claims Act continued to evolve in *Williams v. Kentucky Department of Education*, 113 S.W.3d 145 (Ky. 2003). Therein, the plaintiff brought claims against the Commonwealth of Kentucky's Department of Education ("DOE") in the Board of Claims. The claims were premised on negligent supervision by the faculty and staff of Betsy Layne High School, a school operating under the Floyd County Board of Education. The alleged negligent supervision resulted in the death of a student. The Court stated:

> Appellants could have sued the DOE and/or the Floyd County Board of Education alleging vicarious liability for the negligence of the faculty and staff of Betsy Layne High School in the Floyd Circuit Court except for the fact that both are shielded from liability by governmental immunity. The "no vicarious liability" principle recognizes that an otherwise immune entity does not lose that status merely because its agents or servants can be held liable for the negligent performance of their ministerial duties. Otherwise, there could be no governmental immunity because state agencies perform their governmental functions by and through their agents, servants and employees.

---

in the Board of Claims for negligence in its officers' and employees' performance of ministerial acts, as recognized in *Williams*.

15

*Id.* at 154 (citing *Yanero*, 65 S.W.3d at 519, 527). The Court noted in *Williams*, however, that the action before it was not brought in a judicial court, but in the Board of Claims. *Id.* The Court noted the language of KRS 44.072, which states in part:

> It is the intention of the General Assembly to provide the means to enable a person negligently injured by the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies to be able to assert their just claims as herein provided.

*Id.* (quoting KRS 44.072). The Court then posed the rhetorical question "Does that include vicarious liability claims?" *Id.* at 155. The Court next quoted KRS 44.073(2) and (15) as follows:

> (2) The Board of Claims shall have primary and exclusive jurisdiction over *all negligence claims for the negligent performance of ministerial acts* against the Commonwealth, any of its cabinets, *departments,* bureaus, or *agencies,* or any officers, agents, or *employees* thereof while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies.

> (15) Neither the Commonwealth nor any of its cabinets, departments, bureaus, or agencies or any officers, agents, or employees thereof shall be liable *under a respondeat superior theory* or any other similar theory *for the acts of independent contractors,* contractors, or subcontractors thereof or anyone else doing work or providing services for the state on a volunteer basis or pursuant to a contract therewith.

*Id.* at 155 (quoting KRS 44.073(2), (15)) (emphasis added in *Williams*).

The Court stated that the term "ministerial acts" in KRS 44.073(2) only applied to the negligence of public officers and employees who enjoyed "official immunity" from the good faith, but negligent, performance of discretionary

acts, but *not* for the negligent performance of ministerial acts. *Id.*[7] In other words, KRS 44.073(2) vested primary and exclusive jurisdiction of claims based upon the ministerial acts of otherwise immune state actors in the Board of Claims. The Court stated that KRS 44.073(2) could not pertain to the negligent acts of anyone other than a state official or employee. *Id.* The Court continued: "And subsection (2) cannot be interpreted as waiving the immunity of public officers and employees for their *own* ministerial acts because no such immunity exists." *Id.* (citing *Yanero*, 65 S.W.3d at 522) (emphasis added). The Court next stated:

> Thus, the only possible meaning ascribable to subsection (2) is that it constitutes a waiver of the immunity of the Commonwealth or any of its cabinets, departments, bureaus, or agencies, or managerial officials and employees from vicarious liability for the negligent performance of ministerial acts by other officers, agents, or employees while in the course and scope of their employment.

*Id.* The Court stated that its conclusion was reinforced by subsection (15), which expressly states that immunity based upon vicarious liability is not waived for the negligent acts of anyone else. *Id.* Finally, the Court explained:

> Appellants could have brought an action in the Floyd Circuit Court against appropriate members of the faculty and staff of Betsy Lane High School for the negligent performance of their ministerial duties. In addition, they could have brought an action in the Board of Claims against either the Floyd County Board of Education and/or the DOE (or the Commonwealth) on a theory of vicarious liability. They chose to bring an action only against the DOE. Their failure to file a circuit court action against any or all of the responsible teachers or to file a Board of Claims action against

---

[7] In *Williams*, the particular form of immunity enjoyed by the negligent actors was official immunity from liability from good faith but negligent performance of discretionary acts. *See Yanero*, 65 S.W.3d at 522. However, KRS 44.073(2) is not limited to such persons, but encompasses all persons and entities regardless of the form of immunity that such persons or entities might enjoy. *Id.* at 521–22.

17

the Floyd County Board is immaterial to their right to recover against the DOE.

*Id.* at 155–56 (citations and footnote omitted). Thus, if Judge Winchester's duties regarding the appointment and bonding of a master commissioner were ministerial, not discretionary, the Commonwealth would have vicarious liability if, in the Board of Claims, Judge Winchester were found to have been negligent in his performance of those duties.

The Court's construction of the Act in *Williams* resolved the Court's previous reservations regarding the Act's constitutionality that it voiced in *Yanero*. As noted above, in *Yanero*, the Court indicated concern that if the Act were construed to transfer exclusive jurisdiction of non-immune persons (i.e., state officers or employees performing ministerial functions) to the Board of Claims, such purported transfer may be unconstitutional on a number of grounds. However, *Williams* makes it sufficiently clear that the Act does not do so. The Board of Claims is a statutory exception to sovereign immunity, but is limited to the negligent performance of ministerial acts. Therefore, the Act does not affect the rights of an injured party to pursue claims against state officers or employees for the officer's or employee's own negligence in the performance of ministerial acts in circuit court. However, the Act does create vicarious liability on the part of the Commonwealth for the negligent performance of ministerial acts by officers and employees of the state. In that sense, it is a "waiver" of sovereign immunity, as it waives the *Commonwealth's* immunity from suit based upon negligence in the performance of ministerial functions by

18

its officers and employees. *See also Grayson County Bd. of Edu. v. Casey*, 157 S.W.3d 201, 202–03 (Ky. 2005).

Two cases decided after *Yanero* and *Williams* confirm that only claims based upon alleged negligence in the performance of ministerial acts may be brought in the Board of Claims. In *Stratton v. Commonwealth*, 182 S.W.3d 516 (Ky. 2006), plaintiff brought an action against the Cabinet for Families and Children in the Board of Claims which was dismissed by the Board on the grounds that the Cabinet was protected from the suit by governmental immunity, unless such immunity had been waived. *Id.* at 519. The Court held that the Cabinet was immune because the duties of the Cabinet's employee in question were discretionary, not ministerial (i.e., there was no waiver). The Court stated:

> The Board of Claims Act offers a limited waiver of governmental immunity with regard to negligence claims filed with the Board. The waiver extends only to negligence claims involving the performance of ministerial acts. KRS 44.073(2). A "ministerial" act is one in which the agency has no discretion; non-ministerial, or discretionary acts cannot be a basis for recovery under the Board of Claims Act.

*Id.* The Court found that the Cabinet employee's acts were discretionary and affirmed the Board of Claims' dismissal of the claim.

A plaintiff filed suit against the Transportation Cabinet in the Board of Claims in *Commonwealth v. Sexton*, 256 S.W.3d 29 (Ky. 2008). The Court stated that "[t]he Board of Claims Act (KRS 44.070, *et. seq.*) provides for a waiver of sovereign immunity for negligence in the performance of ministerial acts only." *Id.* at 32. The Court found that the acts of the Cabinet's employees

19

were discretionary, not ministerial, and, accordingly, remanded the matter to the Board of Claims with instructions to enter judgment in favor of the Cabinet. *Id.* at 36.

The parties in the case now before the Court debate whether the plaintiffs sufficiently named the Commonwealth as a party or merely named state officers (e.g. Judge Winchester) who cannot be personally liable in a Board of Claims proceeding. This debate can be put to rest by the statement in *Commonwealth v. Harris*, 59 S.W.3d 896 (Ky. 2001), in which the Court stated:

> Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."

*Id.* at 899 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)). There is no question in the present case regarding notice or opportunity to respond.

### B. The Scope of the Waiver of Sovereign Immunity Under the Board of Claims Act.

The Appellants brought their claims before the Board of Claims. As a result, any award that may have been made by the Board would be paid by the state's general treasury fund. KRS 44.100. This is consistent with the Appellants' assertion that their claims are brought against the defendants in their official capacities.

As indicated, the Franklin Circuit Court relied, in part, on *Horn by Horn v. Commonwealth* to affirm the Board of Claims' determination that claims

against the AOC were subject to its jurisdiction. The Court first quoted the following portion of KRS 44.070(1) in *Horn*:

> A board of claims ... is created and vested with full power and authority to investigate, hear proof, and to compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth, any of its cabinets, *departments*, bureaus or agencies, or any of its officers, agents or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies ....

*Horn*, 916 S.W.2d at 174 (quoting KRS 44.070(1) (ellipses and emphasis added in *Horn*). The Court next noted that Kentucky Constitution, section 27, provides:

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct *departments*, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

*Id.* at 174–75 (quoting Ky. Const. § 27) (emphasis added). The Court reasoned that "[a]s the AOC is a part of the judicial department, it follows that the AOC falls within the reach of KRS 44.070(1) and the Board of Claims." *Id.* at 175.

On further examination of KRS 44.070(1), this Court finds that the decisive word in the statute is not "departments," but is the term "Commonwealth."[8] KRS 44.070(1) states, in pertinent part, that the Board of Claims is vested with full power and authority over claims as a "result of

---

8 Further, the Court's determination that the AOC, while subject to the jurisdiction of the Board of Claims, was protected from liability by quasi-judicial immunity mixed apples with oranges. Judicial and quasi-immunity may bar an action against the AOC's employee in her personal capacity. However, judicial and quasi-judicial immunity would not bar a suit before the Board of Claims based upon negligence in the performance of ministerial actions. *Yanero*, 65 S.W.3d at 521–22.

21

negligence on the part of the *Commonwealth*, any of its cabinets, departments, bureaus, or agencies, or any of its officers, agents, or employees while acting within the scope of their employment by the *Commonwealth* or any of its cabinets, departments, bureaus, or agencies." (Emphasis added.)

The term "Commonwealth" is an unambiguous and encompassing term. It was incorrect for the Court in *Horn* to gloss over the term "Commonwealth" and determine that the Board of Claims' jurisdiction hinged on the later-appearing term "departments." The statute's ensuing enumeration of "cabinets, departments, bureaus, or agencies" serves to amplify the encompassing term "Commonwealth"; it does not detract from it. Thus, the waiver of sovereign immunity, as set forth in KRS 44.070, includes all parts of the Commonwealth that make up the whole.

More concisely, the Board of Claims Act's waiver of the sovereign immunity of the Commonwealth includes the three departments into which the government of the Commonwealth is divided in the Kentucky Constitution under section 27 (i.e., the executive, the legislative, and the judicial departments of the Commonwealth). Any other construction would not give full meaning to the term Commonwealth as used in the Board of Claims Act. A waiver of sovereign immunity must be expressed in the clearest terms. *Withers v. University of Kentucky*, 939 S.W.2d 340, 34–46 (Ky. 1997); *see also Reyes*, 55 S.W.3d at 340. This may be an exacting standard, but KRS 44.070(1) and the other sections of the Board of Claims Act which reference the "Commonwealth" meet such standard.

22

Further, this Court continues to agree with its prior analysis in *Horn* that construing the Board of Claims' jurisdiction to extend to each of the three departments (often called "branches") of the Commonwealth does not impair the separation of powers doctrine which is fundamental to Kentucky's tripartite system of state government. The limited waiver of sovereign immunity for citizens to seek redress for negligence in the performance of ministerial acts should not infringe upon the "core" functions of any of the three departments of the Commonwealth. *Horn*, 916 S.W.2d at 175–76.

## C. Analysis of Jurisdiction Over Each Appellee

### 1. Charles King

KRS 44.070(1) provides that the Board of Claims is established to "investigate, hear proof, and to compensate persons for damages sustained to either person or property as a proximate result of *negligence* on the part of the Commonwealth, or any of its officers, agents, or employees while acting within the scope of their employment." (Emphasis added.) Similarly, KRS 44.072 provides that "[i]t is the intention of the General Assembly to provide the means to enable a person *negligently* injured by the Commonwealth ... to be able to assert their just claims as herein provided." (Emphasis added.) Finally, KRS 44.073(9) states that "[n]egligence as used herein includes negligence, gross negligence, or wanton negligence."

While the Appellants attempt to fit King's actions within the definition of "wanton negligence," such characterization does not fit. There is no escape from the conclusion that King's actions in conversion of the proceeds of the

23

judicial sale constituted an intentional tort, not any form of negligence. Therefore, all other issues relating to King's conduct aside, his actions do not come within the scope of the Board of Claims Act's limited waiver of sovereign immunity for negligence. The Commonwealth has not waived its sovereign immunity in such a manner that awards to claimants based upon intentional torts would be paid from the state's general treasury fund.

## 2. The AOC

The Appellants, in the course of these proceedings, have argued that King and Judge Winchester were employees of the AOC or that the AOC was, at least, the proper entity to defend the Appellants' claims against King and Judge Winchester. It is already established in the immediately preceding section of this opinion that there is no cognizable claim against King under the Board of Claims Act. Therefore, there is no basis for a claim against the AOC on the ground, which it is unnecessary to ultimately decide, that it was King's employer.

Next, it is abundantly clear that the AOC is not the employer of circuit judges, such as Judge Winchester. Circuit court judges are elected to their office. Ky. Const. § 117. Circuit court judges' compensation is fixed by the General Assembly. Ky. Const. § 120. Finally, circuit court judges, along with other certain offices, are designated as officers of the Commonwealth in KRS 61.020.

The AOC is the staff of the Chief Justice in executing the policies and programs of the Court of Justice. KRS 27A.050. All employees of the AOC

serve at the pleasure of the Chief Justice. *Id.* Because circuit judges are elected and do not serve at the pleasure of the Chief Justice, it is sufficiently clear that a circuit judge is not an employee of the AOC. This conclusion is further confirmed by the fact that a circuit court judge's compensation is fixed by the General Assembly pursuant to section 120 of the Kentucky Constitution. In contrast, the compensation of employees of the AOC is fixed by the Chief Justice. KRS 27A.050. These statutory differences render it clear that a circuit judge is not an employee of the AOC.[9]

Thus, under the facts of this case, there was no jurisdiction in the Board of Claims for a claim against the AOC. It was not an actor in the situation giving rise to the claim, nor was it the employer of any actor in the situation giving rise to the claim.

### 3.    Judge Winchester

Judge Winchester, as the sitting judge of the McCreary Circuit Court at the time of the underlying events which gave rise to this action, was protected from suit in his personal capacity by the doctrine of judicial immunity. *See Henry v. Wilson,* 249 Ky. 589, 61 S.W.2d 305, 307 (Ky. 1933). As a preface to our analysis of whether the Appellants are able to state viable claims in the Board of Claims based upon allegations of negligence by Judge Winchester, the Court observes the distinction between such analysis and the doctrine of

---

[9] The Court notes that the Attorney General has provided the defense to Appellants' claims. KRS 44.090, which addresses the defense of claims, seems to provide for the Attorney General to provide a defense to an entity or person against whom suit is brought in the Board of Claims, and for whom an attorney is not otherwise available.

judicial immunity which protects judges from suit in civil court. The present case does not involve the doctrine of judicial immunity, nor does it directly or indirectly disturb the existing law on judicial immunity.

Judge Winchester, in his official capacity as a circuit judge, is an officer of the Commonwealth. KRS 61.020. The Commonwealth has waived its sovereign immunity, to the extent provided in the Board of Claims Act, for claims based upon allegations of negligence by Judge Winchester in the performance of ministerial functions of his office. KRS 44.073(2).

In *Collins v. Commonwealth*, a decedent's administratrix brought suit against the Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet (the "Cabinet") in the Board of Claims alleging that the Cabinet (through its employees) was negligent in the inspection of surface mining operations. *Collins*, 10 S.W.3d at 126. Specifically, the administratrix alleged that the Cabinet had failed to enforce a regulation requiring that roads constructed in connection with the mining operations to include culverts with a sufficient capacity to handle the peak run off from a from a 10 year, 24 hour precipitation event. *Id.* The Court stated that "[t]he essence of a discretionary power is that the person or persons exercising it may choose which of several courses to be followed." *Id.* The Court also stated that "[t]o decide whether mine site inspection by Cabinet employees is ministerial or discretionary, it is necessary to determine whether the acts involve policy-making decisions and significant judgment, or are merely *routine duties*." *Id.* (emphasis added). The

Court concluded that inspection of mine operations to assure conformity to regulations was a ministerial function. *Id.*

In *Williams*, the plaintiff brought a wrongful death action against the Kentucky Department of Education. The plaintiff alleged that the death of a high school student was caused by the negligent supervision of a school event by the school staff. *Williams*, 113 S.W.3d 148–51. The Court noted that the school staff had duties to supervise students based on statute and a code of conduct adopted by the school. *Id.* at 150–51. With regard to the staff's duty to supervise the students, the Court stated "[p]romulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Id.* at 150 (citing *Yanero*, 65 S.W.3d at 529, and KRS 161.180(1)). With regard to the staff's duty to abide by the school's code of conduct, the Court stated that "[c]ompliance with this directive was a ministerial, not a discretionary ... function." *Id.* at 151; *see also Sexton*, 256 S.W.3d at 33 (stating that while acts may be ministerial even if not prescribed by statute, ministerial duties will frequently be established by guidelines in statutes and regulations).

Herein, the relevant statutes enabled Judge Winchester to operate his court with the use of a master commissioner. KRS 31A.010(1); KRS 31A.020. KRS 31A.010(3)(a) specifically provided that a judge could not operate his court with a commissioner beyond four years without reappointment of the commissioner. KRS 31A.020 expressly provided that a judge operating his court with a master commissioner must approve the surety obtained by the commissioner on the commissioner's bond. Although an analysis as to

whether such actions/inactions are ministerial or discretionary is highly case specific, it is apparent in this case that Judge Winchester failed to perform routine duties of his office which did not involve significant judgment. *Collins,* 10 S.W.3d at 126; *Williams,* 113 S.W.3d at 148–51.

In sum, we hold that Judge Winchester's continued use of a master commissioner, without reappointment, to perform significant functions in actions in the McCreary Circuit Court without a bond, and without surety approved by Judge Winchester, is grounds for a claim in the Board of Claims based upon alleged negligence in the performance of a ministerial duty by an officer of the state.

## III. Conclusion

Accordingly, we remand the Appellants' claims against the Commonwealth of Kentucky, based upon the alleged negligence of Judge Winchester, to the Board of Claims for a determination, pursuant to KRS 44.120, of whether the Appellants suffered damages as a proximate cause of any alleged negligence in the performance of said ministerial duties.

Schroder, Scott and Venters, JJ., concur. Noble, J., dissents by separate opinion in which Cunningham, J., and Connolly, Special Justice, join. Minton, C.J. and Abramson, J., not sitting.

NOBLE, J., DISSENTING: I dissent because I do not believe that a claim involving the Court of Justice, the AOC, or any judicial officers or court employees may proceed at the Board of Claims. Nevertheless, in *Horn by Horn v. Commonwealth,* 916 S.W.2d 173, 176 (Ky. 1995), this Court held in part that

the Board had jurisdiction over the Court of Justice and thus the AOC. And the majority, though it does not accept all the reasoning of *Horn*, reaches the same holding. But in my view, *Horn* and the majority opinion are flawed and have perpetuated an application of the waiver doctrine that does not comfortably fit with elected officers.

The AOC argues against this part of *Horn* in two ways. First, it claims that allowing the Board to have jurisdiction would violate, or at least harm, the separation of powers included in sections 27 and 28 of the Kentucky Constitution. Second, it claims that the Board of Claims act does not unambiguously waive sovereign immunity as to the Court of Justice and the AOC.

The constitutional question need not—and indeed cannot—be resolved in this case if it can be decided on another ground. *See Louisville/Jefferson County Metro Gov't v. TDC Group, LLC*, 283 S.W.3d 657, 660 (Ky. 2009) (applying "'the long-standing practice of this Court ... to refrain from reaching constitutional issues when other, non-constitutional grounds can be relied upon.'" (quoting *Baker v. Fletcher,* 204 S.W.3d 589, 597-98 (Ky. 2006)); *Baker,* 204 S.W.3d at 598 ("[W]e must not reach a constitutional issue if other grounds are sufficient to decide the case."); *Dawson v. Birenbaum,* 968 S.W.2d 663, 666 (Ky. 1998) ("It is well settled that where a party pleads both statutory and constitutional claims, the court deciding those claims should limit itself to considering the statutory claims if in so doing the court may avoid deciding complex constitutional issues."); *see also Spector Motor Serv. v. McLaughlin,*

29

323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable.").

Essentially, a constitutional issue may and should be avoided if a claimant can obtain relief on some other ground. Because I ultimately agree with the AOC's second point in this regard, that the Act did not waive immunity as to the courts, the separation of powers issue need not be addressed. Though the majority disclaims the reasoning of *Horn*, it nevertheless maintains that case's holding that the Court of Justice is subject to the Board of Claims. I disagree with that holding, because both *Horn's* and the majority's reasoning are erroneous.

*Horn* read the Board of Claims act as waiving sovereign immunity for two reasons. It "first not[ed] ... discomfort with the proposition ... that the Board of Claims has no jurisdiction over the AOC." *Horn*, 916 S.W.2d at 174. It then claimed that the language of the Act itself was broad enough to waive the immunity of the Court of Justice and its agencies, officers, and employees.

This first concern—the Court's "discomfort"—simply is not sufficient to allow a waiver of sovereign immunity. Inherent in the very concept of such immunity is that wrongs by the government may not be remedied by a suit at law or otherwise without the state's permission. Absent a waiver, which may only be created by the General Assembly, *see* Ky. Const. § 221, there is no avenue to seek redress for wrongs committed by the Commonwealth or its

30

agents. Though this "discomfort" may be a persuasive policy argument in favor of waiving sovereign immunity, it is an insufficient rationale for this Court to find such a waiver.

The second part of *Horn's* discussion is simply a misreading of the Act. This part of the opinion focused on KRS 44.070(1), the core of the Act, which states in part:

> A Board of Claims ... is created and vested with full power and authority to investigate, hear proof, and to compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth, any of its cabinets, *departments*, bureaus, or agencies, or any of its officers, agents, or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies ....

(Emphasis added.) The Court focused on the use of the word "departments" in the statute, and noted that the judiciary is one of the "departments" of government under section 27 of the Kentucky Constitution. Construing the use of "departments" in both the statute and the constitution, the Court held that "[i]t is clear to us that the intent of the legislature, in enacting KRS 44.070, was to give citizens the right of recourse against the government—the government, to refer back to the beginning of our discussion, being made up of the three separate 'departments.'" *Horn*, 916 S.W.2d at 175.

However, the legislature, which has the only power to waive sovereign immunity, has distinguished the constitutional use of "department," which was used as a synonym for "branch," from the statutory meaning of the word by specifically defining it and commanding that the statutory definition be used throughout the Kentucky Revised Statutes whenever possible. KRS 12.010

31

provides definitions for terms relating to administrative organizations and states that they are to be used "throughout the Kentucky Revised Statutes where applicable and appropriate unless the context requires otherwise." The word "department" is one of those defined terms and "means that basic unit of administrative organization of state government, by whatever name called, designated by statute or by statutorily authorized executive action as a 'department,' such organization to be headed by a commissioner." KRS 12.010(2).

Clearly, this definition is incompatible with classifying the Court of Justice as a statutory "department," since that term contemplates an agency within the executive branch of government. KRS 12.010 as a whole describes executive branch entities, falling as it does under that part of the Kentucky Revised Statutes titled "Executive Branch," and referring repeatedly to "executive action" and "executive branch." The statute even goes so far as to place a "department" directly in the executive branch by including it in the definition of an "organizational unit," which "means any unit of organization in the *executive branch* of the state government that is not an administrative body, including but not limited to any agency, program cabinet, *department*, bureau, division, section or office." KRS 12.010(1) (emphasis added). That "department" refers to an executive branch entity should be plainly evident from this language.

Comparison of the definition with the Court of Justice and the AOC, however, further cements this understanding. Departments are required to be

32

"headed by a commissioner." Yet neither the Court of Justice nor the AOC are "headed by a commissioner." Both are headed instead by the Chief Justice of the Commonwealth, who is "the executive head of the Court of Justice," Ky. Const. § 110(5)(b), and for whom the "Administrative Office of the Courts [wa]s created to serve as the staff," KRS 27A.050.

The *Horn* Court was presented with this argument, though apparently in a simplified form. Rather than discussing its merits, the Court dismissed it in a summary fashion, stating: "We choose ... not to become entangled in semantics, for the general rule in statutory construction 'is to ascertain and give effect to the intent of the General Assembly.'" *Horn*, 916 S.W.2d at 175 (quoting *Beckham v. Bd. of Educ. of Jefferson County*, 873 S.W.2d 575, 577 (Ky. 1994)).

But such "statutory construction" is only necessary where the statutory language is not clear. Legislative intent siphoned out of the ether cannot trump clear statutory language. After quoting the intent language in *Beckham*, which actually described only the Court's "duty," not a rule of construction, *Horn* unfortunately disregarded the very next sentence, which stated: "We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham*, 873 S.W.2d at 577.

The question then is whether the context of the Board of Claims Act requires use of a different definition of "department" than appears in KRS 12.010. Upon reading the Act as a whole, it does not.

No doubt, this is why the majority has declined to perpetuate *Horn's* emphasis on the word *departments* in the Board of Claims Act. Instead, the majority reads the Act's broad language referring to waving the immunity of the *Commonwealth* and all its various agencies and agents to apply to the judicial and legislative branches of government. This claim, too, is flawed. The Act only waives immunity for the executive branch.

The most important point in this regard is that the language used to describe the entities whose immunity is waived by the Act tracks the structure of the executive branch. KRS 44.070(1), which includes the primary waiver of sovereign immunity for the Board, uses the language "cabinets, departments, bureaus, or agencies"; the first two of these terms is defined in KRS 12.010 and all four are discussed under the executive branch in KRS 12.010(1). Both KRS 44.072, which discusses the intent of the General Assembly as to waiver, and KRS 44.073, also uses the same "cabinets, departments, bureaus, or agencies" language. This alone indicates the General Assembly's intention that the waiver only apply to the executive branch. It is also abundantly clear that much of this language was used *prior* to the existence of the AOC or the unified Court of Justice, which lends credence to the argument that the language was not intended to apply to the judiciary.

That the Act is intended to apply only to the executive branch is supported by language throughout the Act describing the composition and operation of the Board by the executive branch. The Board itself is composed of the members of the Crime Victims Compensation Board, KRS 44.070(1), who

are all appointed by the governor, KRS 346.030(1), and one of whom, the chairman, serves at the pleasure of the governor, KRS 346.030(3). The hearing officers who assist the Board are also appointed by the governor, KRS 44.070(6), and they are impliedly removable by the governor, KRS 44.070(7).

The Board's powers also indicate the Act applies only to the executive branch. The Board has the power to order the "affected state agenc[y] to investigate claims and the incidents on which they are based and to furnish to the board and the claimant in writing the facts learned by investigation," KRS 44.086. Since the Board itself is an executive entity, such power should only go to other executive entities, not entities in other branches of government.

Additionally, legal decisions about defending a claim are made by the executive branch. KRS 44.090 provides that the defense shall be made by "[t]he attorney[] appointed by the governor," and refers to that attorney as the "cabinet attorney" who "represent[s] his respective cabinet, department, bureau, agency, or employee." If such an attorney is unavailable, the Attorney General, another executive branch official, shall appoint one of his assistants to present the defense. KRS 44.100 again refers to the attorneys who defend claims as "assistant attorneys general or attorneys, appointed by the Governor to represent the Commonwealth's cabinets, departments, agencies or employees, agents or officers thereof." Finally, the decision whether to appeal an award by the Board is controlled by the Attorney General, KRS 44.140(1) ("No state agency can appeal any decision of the board without securing the

35

prior approval of the Attorney General."), which only makes sense if the decision can affect only an executive branch entity.

These aspects of the Act make the AOC's claim that it violates the constitutional separation of powers more than understandable. Under the Act, the Board, an executive branch entity, gets to order an investigation of any affected entity; decisions about claims are made by the executive branch; and the claim itself is decided by the executive branch. Each of these creates a danger of violating separation of powers when applied to other branches of government.

But this danger of separation of powers simply augurs in favor of reading the Act as applying *only* to the executive branch. As the majority notes in another context, interpretations of statutes rendering them unconstitutional should be avoided whenever possible. *Ante*, slip op. at 15; *see also Yanero v. Davis*, 65 S.W.3d 510, 525 (Ky. 2001) ("It is a well established principle of constitutional law and statutory construction that if a statute is reasonably susceptible to two constructions, one of which renders it unconstitutional, 'the court must adopt the construction which sustains the constitutionality of the statute.'" (quoting *Davidson v. American Freightways, Inc.*, Ky., 25 S.W.3d 94, 96 (2000)).

Setting any constitutional concern aside, this interpretation is also compelling in light of the Act's expressed intent to be a limited waiver of sovereign immunity. KRS 44.072 states that "[t]he Commonwealth ... waives the sovereign immunity defense *only in the limited situations as herein set*

36

*forth.*" (Emphasis added.) The statute goes on to say that "[i]t is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth ... in all other situations except where sovereign immunity is specifically and expressly waived as set forth by statute." KRS 44.073 also expressly preserves the state's sovereign immunity except as expressly stated otherwise in statutes; in fact, it includes *three* subsections further expressing the idea that the General Assembly intended to retain a substantial portion of its sovereign immunity. *See* KRS 44.073(11) ("Except as otherwise provided by this chapter, nothing contained herein shall be construed to be a waiver of sovereign immunity or any other immunity or privilege ...."); KRS 44.073(12) ("Except as otherwise specifically set forth by statute and in reference to subsection (11) of this section, no action for damages may be maintained in any court or forum against the Commonwealth ...."); KRS 44.073(13) ("The preservation of sovereign immunity referred to in subsections (11) and (12) of this section includes, but is not limited to, the following: (a) Discretionary acts or decisions; (b) Executive decisions; (c) Ministerial acts; (d) Actions in the performance of obligations running to the public as a whole; (e) Governmental performance of a self-imposed protective function to the public or citizens; and (f) Administrative acts.").

This reservation of immunity and requirement that any waiver be express and specific in a statute is also reflected in this Court's jurisprudence on the subject. For example, this Court has held:

"Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the legislature to effect this object is clearly expressed."

City of Bowling Green v. T & E Elec. Contractors, Inc., 602 S.W.2d 434, 436 (Ky. 1980) (quoting Commonwealth, Department of Highways v. Hale, 348 S.W.2d 831, 832 (Ky. 1961)). This Court has also stated that it "will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" Withers v. University of Kentucky, 939 S.W.2d 340, 346 (Ky. 1997) (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974)); see also Jones v. Cross, 260 S.W.3d 343, 347 (Ky. 2008); Grayson County Bd. of Educ. v. Casey, 157 S.W.3d 201, 205 (Ky. 2005); Young v. Hammond, 139 S.W.3d 895, 914 (Ky. 2004); Reyes v. Hardin County, 55 S.W.3d 337, 340 (Ky. 2001).

Under this paradigm, I cannot say that the Act includes a waiver of sovereign immunity for any branch of government except the executive branch "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." It is reasonable that the General Assembly intended to limit the applicability of the Act's waiver only to the executive branch. Compared to the other branches, the executive branch has dozens of administrative entities and tens of thousands of employees, making it by far the largest branch of government. The vast majority of injuries caused by the state stem from the executive branch's

38

actions. The Court of Justice, on the other hand, has only one administrative agency and only a few thousand employees, a large fraction of whom are directly elected officials. Similarly, the legislative branch is small in comparison to the executive branch, having relatively few officers and employees and only one administrative agency, the Legislative Research Commission. KRS 7.090(1) ("There is created a Legislative Research Commission as an independent agency in the legislative branch of state government, which is exempt from control by the executive branch and from reorganization by the Governor."). Thus, only a small percentage of potential claims would arise from the actions of those two branches.

Nor is this exclusion of the judiciary and legislature from otherwise generally applicable statutes unprecedented. For example, the Court of Justice and the General Assembly, despite each having an administrative agency, are expressly excepted from some of the statutory scheme relating to regulations for administrative entities. *See* KRS 13A.010(1) ("'Administrative body' means each state board, bureau, cabinet, commission, department, authority, officer, or other entity, *except the General Assembly and the Court of Justice,* authorized by law to promulgate administrative regulations ...." (emphasis added)).

There is also the fact that the Act just is not a good fit with elected officials. The judiciary and the legislature are all elected directly by the people. As such, their work is direct state action, as they are not "employees" of their administrative agency, but rather the other way around. The agencies perform

a public purpose only to the extent that they support or provide staff for the elected officials. Judges and legislators are the state embodied in the person of an official. Both have additional personal immunity other than through sovereign immunity: judicial and legislative. In fact, in *Horn*, despite holding that the Act applied to the judiciary, the Court went on to also hold that the claim at the Board could not continue because the employee had "quasi-judicial immunity" which barred the claim. (This was erroneous, as the claim at the Board was against the *state*, not the individual. The presence of other immunities, of course, further underscores the difference between executive and judicial branch personnel.)

Taken as a whole, it is evident that the Act contemplates only actions against executive branch agencies. Simply put, there is nothing in the Act to indicate that its use of the term "departments" refers to anything other than administrative organizations under the executive branch as defined in KRS 12.010, and the use of the term "Commonwealth" cannot be read so broadly as to rewrite the entire Act. I therefore conclude that the definition of "department" in KRS 12.010 is applicable and appropriate for use in the Board of Claims Act and the context does not require otherwise. Thus, *Horn* was incorrect to hold that "department" as used in KRS 44.070 applied to the "departments" of government—normally referred to as "branches"—as defined in section 27 of the Kentucky Constitution. I also conclude that the majority errs in reading the term "Commonwealth" expansively to apply outside the executive branch.

40

I instead would hold that the Board of Claims Act, as currently drafted, does not waive the sovereign immunity of the Court of Justice, or its agency, officers and employees. (Nor does it waive the immunity of the General Assembly, the LRC, or its employees, though that is the clear implication of the majority opinion.) The Board therefore properly determined that it did not have jurisdiction over the Appellant's claims.

Cunningham, J., and Connolly, Special Justice, join.

COUNSEL FOR APPELLANT/CROSS-APPELLEE, PATRICIA GREENE:

Mendel Austin Mehr
Philip Gray Fairbanks
Austin Mehr Law Offices, PSC
145 West Main Street, Suite 300
Lexington, Kentucky 40507

COUNSEL FOR APPELLANTS/CROSS-APPELLEES, THELMA CORNELIUS,
SANDY WOOD JOHNSON, ANNA PERKINS, DEAN WOOD, DOROTHY WOOD,
LORELLA WOOD AND JOHN C. WOOD:

Mendel Austin Mehr
Austin Mehr Law Offices, PSC
145 West Main Street, Suite 300
Lexington, Kentucky 40507

COUNSEL FOR APPELLEES/CROSS-APPELLANT, COMMONWEALTH OF
KENTUCKY, ADMINISTRATIVE OFFICE OF THE COURTS; AND
CROSS-APPELLEES, HONORABLE JERRY WINCHESTER, AND CHARLES E.
KING:

James Michael Herrick
Assistant Attorney General
Civil and Environmental Law Division
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601-3449

Lisa Kathleen Lang
Assistant Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE, KENTUCKY BOARD OF CLAIMS:

George Mitchell Mattingly
Legal Counsel
Board of Claims
130 Brighton Park Blvd.
Frankfort, Kentucky 40601-3113