Christopher HORN, By His Next Friend, Billy Horn, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Judicial Branch, Administrative Office of the Courts, Appellee.

No. 94–SC–421–DG.

Supreme Court of Kentucky.

Nov. 22, 1995.

Rehearing Denied March 21, 1996.

Edward E. Dove, Lexington, for appellant.

Grant M. Helman, Louisville, for appellee.

STUMBO, Justice.

This appeal arises from a judgment by the Court of Appeals holding that the Board of Claims has no jurisdiction over the Administrative Office of the Courts. We reverse that holding, but support the lower court's position that the court employee in question be afforded quasi-judicial immunity.

This matter involves the treatment of the Appellant, Christopher Horn, by Mary Ann Haynes, a Court Designated Worker (CDW), employed by the Appellee, Judicial Branch, Administrative Office of the Courts (AOC). The Appellant, a juvenile, was on conditional release for the offense of inhaling a volatile substance, when, in May of 1990, Haynes was notified by the Appellant's mother that the Appellant had resumed inhaling paint fumes, in violation of his release. At this time, the Appellant's mother also informed Haynes that the Appellant had attempted suicide a week earlier by ingesting prescription drugs. By letter dated May 17, 1990, Haynes informed Judge Julia Adams, of Madison District Court, of the Appellant's behavior, including the suicide attempt. On May 25, 1990, Judge Adams committed the Appellant to the Cabinet for Human Resources (CHR), but the Appellant was placed under "house arrest" with his parents until the CHR could find a place for the Appellant. The Appellant violated his "house arrest" and, on May 30, 1990, was ordered into custody. The next day, the Appellant, accompanied by Haynes, was transported to the Madison County Detention Center. Haynes did not advise the deputy sheriffs or the jailer of the Appellant's suicidal tendencies. Within thirty-five minutes of being placed in an isolated cell, the Appellant attempted to take his life, leaving him severely brain damaged.

The Appellant, by his next friend and father, Billy Horn, filed an action with the Board of Claims pursuant to KRS 44.070 against the AOC, alleging negligence on the part of Haynes in failing to take reasonable steps to ensure the Appellant's safety while incarcerated. The Board dismissed the claim for lack of jurisdiction. On appeal, the Franklin Circuit Court held that the AOC was subject to the jurisdiction of the Board of Claims, but that the acts of the CDW were entitled to complete immunity. The Court of Appeals reversed that part of the lower court's decision which held that the Board of Claims had jurisdiction over the AOC, but affirmed that part of the decision which dismissed the claim based upon immunity.

■ We dispose of the jurisdiction issue by first noting our discomfort with the proposition, as expressed by the Court of Appeals, that the Board of Claims has no jurisdiction over the AOC. While the Court of Appeals stated that its opinion was not meant to "imply that one aggrieved by some entity connected with the Court of Justice is without redress," it failed to explain in what manner such redress might be sought. We, however, find it clearly articulated within the language of KRS 44.070(1) that such redress is to be sought in the Board of Claims:

> A board of claims ... is created and vested with full power and authority to investigate, hear proof, and to compensate persons for damages sustained to either person or property as a proximate result of negligence on the part of the Commonwealth, any of its cabinets, *departments*, bureaus or agencies, or any of its officers, agents or employes while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies.... (emphasis added).

■ The Appellant directs us to the Kentucky Constitution, particularly § 27, which states:

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which

are legislative, to one; those which are executive, to another; and those which are judicial, to another.

As the AOC is part of the judicial department, it follows that the AOC falls within the reach of KRS 44.070(1) and the Board of Claims. As we interpret the Appellee's argument, the judiciary, and in particular, the AOC, is not a "department" as intended by KRS 44.070 because, pursuant to KRS 12.010(2), a department must "be headed by a commissioner," and the AOC is headed instead by the Chief Justice, as the AOC functions "to serve as the staff for the chief justice." KRS 27A.050. We choose, however, not to become entangled in semantics, for the general rule in statutory construction "is to ascertain and give effect to the intent of the General Assembly." *Beckham v. Bd. of Educ. of Jefferson Cty.*, Ky., 873 S.W.2d 575, 577 (1994). It is clear to us that the intent of the legislature, in enacting KRS 44.070, was to give citizens the right of recourse against the government—the government, to refer back to the beginning of our discussion, being made up of the three separate "departments."

In reconciling the statutory language with the constitutional language, we also look to § 14 and § 28 of the Kentucky Constitution. Pursuant to § 14, every citizen has a right to redress for any injury done to him or her. Pursuant to § 28, one branch of government shall not exercise any power over any other branch of government. These sections are equally preserved and fortified by the language of KRS 44.070(1), for under this statute, citizens may seek redress for harm done to them by a negligent act of any branch of government through the Board of Claims without infringing upon, what we term, the "core" powers of said branch of government. By this, we mean that KRS 44.070(1) leaves intact the inherent powers necessary for the operation of any of the three governmental departments—for example, the power of the legislature to pass legislation—and instead directs its concern towards negligent conduct not properly related to "core" powers. It is clearly not a threat to the judiciary to hold its employees to a negligence standard. In the inverse, if we were to find no negligent liability on the part of the AOC, a reading of KRS 44.070(1) would indicate that the Court of Justice is not to be considered a branch of the government, which would fall clearly in contravention with § 27 of the Kentucky Constitution. Lastly, while we agree with the Appellee's contention "that the separation of powers doctrine is fundamental to Kentucky's tripartite system of government and must be 'strictly construed'," *Legislative Research Com'n v. Brown*, 664 S.W.2d 907, 912 (1984) (quoting *Arnett v. Meredith*, 275 Ky. 223, 121 S.W.2d 36, 38 (1938)), we fail to see how the action at issue, involving the alleged negligence of an employee of the court, places our system of three distinct departments of government in jeopardy.

We also feel that the Court of Appeals painted with too broad of a brush in applying *Ex Parte Farley*, Ky., 570 S.W.2d 617 (1978), and *Ex Parte Auditor of Public Accounts*, Ky., 609 S.W.2d 682 (1980), to support its position that jurisdiction over the AOC does not exist in the Board of Claims. Those cases involved certain internal procedures of the judicial department which, we agree, are best left within the province of this branch of government. In *Farley*, we denied an open records request by the public advocate to produce documents compiled by the AOC which were utilized by the Court in evaluating death penalty cases, noting that the documents "are in the same category as any other source of knowledge or information ... from which the members of the court may properly seek assistance or inspiration in the formulation of the judgments." *Id.* at 627. Likewise, in *Auditor*, we held that the Auditor of Public Accounts had no authority to inspect the books and accounts of the State Bar Association, as the Bar was an arm of the judiciary and accountable to that department only.

In its treatment of the case at bar, the Court of Appeals cited to language in *Auditor* in which this Court stated that it was "unmistakably clear that the judicial branch of this state government has exclusive authority to manage its own affairs." *Id.* at 685. We agree. Clearly the financial state of the Bar is within the purvey of the

judicial department and must be managed therein. However, it does not follow that the court is the only forum in which the negligence of one of its employees may be resolved. A claim processed in the Board of Claims does not interfere with the judicial function. In fact, were it not for the Board of Claims disposing of such matters, the ability of the judiciary to carry out its constitutional duties would be placed in a precarious state, as the court would be forced to sort through what could certainly become a multitude of extraneous work. Furthermore, if we were to read *Farley* and *Auditor* as the Court of Appeals does, the AOC would never be liable for its negligence. Finally, it deserves mentioning that the Court of Appeals itself interpreted *Auditor,* in *Department For Human Resources v. Paulson,* Ky.App., 622 S.W.2d 508 (1981), to stand for "the proposition that the judicial branch of government has the exclusive authority to manage its own affairs ... in the sense of rule making, appointments of personnel, admissions to the bar, disciplinary actions, and the administration of the Bar Association." *Id.* at 509. These are examples of the "core" powers to which we spoke above. Neither *Auditor* nor *Farley* should be stretched to apply to anything other than "core" powers.

As to the second issue, we hold that the acts of the CDW were protected by quasi-judicial immunity as Haynes was acting within the scope of her employment and under the direction of a judge of the court. Here, we agree with the Court of Appeals when it stated: "In this instance the court designated worker was that officer who carried into effect what was required to be done by the court. We can think of no better example of where absolute immunity attaches...." The Appellant would have us believe that the CDW was acting outside the scope of employment when she accompanied the juvenile to the detention center because Haynes testified that her purpose in making the trip was to get a glimpse of this new facility. Notwithstanding the CDW's motives, however, the fact remains that Haynes would not have been allowed access to the detention center were she not employed as a court designated worker. It would be splitting hairs indeed to divvy up the CDW's actions into categories of within and without scope of employment based upon some subjective rationale utilized by the CDW in assessing her daily routine moment by moment. Rather, we believe the better route flows from Appellee's argument that the totality of Haynes' function as a court designated worker should govern rather than the happenstance of her being in the car with Appellant. We agree with the opinion by the Court of Appeals in *Dugger v. Off 2nd, Inc.,* Ky.App., 612 S.W.2d 756 (1980), which, while involving quasi-judicial immunity for a prosecutor, applies equally with regard to the duties of the CDW in the case at bar, in that quasi-judicial immunity attaches to the CDW when working within her capacity as a court designated worker.

For the reasons set forth above, the decision of the Court of Appeals is reversed in part, and affirmed in part.

FUQUA, LAMBERT, LEIBSON, REYNOLDS and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., concurs as to the immunity issue, but dissents as to the jurisdictional issue.