**Anna M. STONE, Appellant/Cross–
Appellee,**

v.

**Leslie B. GLASS Appellee/Cross–
Appellant.**

**Nos. 1998–CA–001973–MR,
1998–CA–002062–MR.**

Court of Appeals of Kentucky.

Feb. 4, 2000.

Discretionary Review Denied
Feb. 14, 2001.

David C. Stratton, Pikeville, Kentucky,
for appellant/cross–appellee.

Daniel E. Murner, David W. Zahniser,
Lexington, Kentucky, for appellee/cross–
appellant.

Before: JOHNSON, KNOPF, and
SCHRODER, Judges.

*OPINION*

SCHRODER, Judge:

This is an appeal from a judgment of the
Fayette Circuit Court on claims for profes-
sional malpractice and outrageous conduct.
Because appellee is entitled to quasi-judi-
cial immunity, we reverse the decision of
the Fayette Circuit Court.

Appellant, Anna Stone (Stone), was mar-
ried to Charles Walton (Walton) in August,
1986. They had two children, Hank, born
in March, 1990, and Zachary, born in Feb-
ruary, 1988. They were divorced in De-
cember, 1991 by the Pulaski Circuit Court,
and agreed to joint custody of the children.

On March 26, 1992, Stone filed a motion
in Pulaski Circuit Court seeking sole cus-
tody of the children. Stone contacted ap-
pellee, Leslie Glass (Glass), a licensed
clinical social worker, about performing a
custodial evaluation. Walton agreed to
the selection of Glass. Glass would only
agree to perform the evaluation if she
were appointed by the court. Stone then
sought and obtained Glass's appointment
in a court order dated April 14, 1992. In
Glass's report, dated June 2, 1992, she
stated that both Stone and Walton were
good parents, but recommended that Wal-
ton be given sole custody of the children.

On August 31, 1992, the court awarded
sole custody of the children to Walton.
Stone was given visitation, including six
weeks during summer vacation, Thanks-
giving, Christmas Eve, Christmas Day,
Easter Sunday, spring break, Mother's

Day, and the children's birthdays in alternate years. Stone was ordered to pay child support in the amount of $759.00 per month.

Stone made a motion for the court to set forth specific findings of fact for the custody award. On October 21, 1992, the court amended its previous order and explained its findings of fact stated in the August 31, 1992 order. Among its reasons, the court stated that from the testimony of Glass, it found that the children had a significant bond with their father, and the children were more attached to their father. The judge further noted that Glass's testimony indicated that Walton had made the children his number one priority, whereas Stone had not. (It should be noted that Stone appealed the sole custody award to this court, which, in an unpublished opinion rendered on May 5, 1995 reversed the award of sole custody to Walton and remanded to Pulaski Circuit Court to reinstate joint custody. In November, 1995, Stone again moved the Pulaski Circuit Court to modify the custody order, and the court awarded sole custody to Walton, finding that joint custody was no longer workable. This Court affirmed the trial court's order in an unpublished opinion rendered on August 14, 1998.)

On July 9, 1993, Stone filed suit against Glass in Fayette Circuit Court, alleging, among other claims, professional negligence and outrageous conduct in the performance of her custodial evaluation. A jury trial commenced on April 27, 1998. The issues of liability and damages were ordered bifurcated by the court. At the close of Stone's case in the liability portion of the trial, Glass moved for a directed verdict, arguing, among other things, that she was entitled to immunity as a court-appointed social worker. The court denied the motion.

The jury found for Stone on the negligence claim, and for Glass on the outra-geous conduct claim. The court then excluded the jury and held hearings regarding the evidence Stone intended to offer regarding her claimed damages, ruling that certain damages claimed were improper and not recoverable as a matter of law and that certain evidence Stone intended to present regarding such damages was inadmissible. As a result, Stone was unable to present any evidence on any items of damages, and the jury was dismissed. Judgment was entered on July 14, 1998, and this appeal followed. Glass filed a cross-appeal.

■ On appeal, Stone alleges that the trial court: 1) erred in bifurcating the issues of liability and damages; 2) erred in its refusal to allow Stone to introduce evidence subsequent to August 31, 1992, the date of the Pulaski Circuit Court's issuance of its original findings of fact; 3) erred in prohibiting Stone from presenting evidence of damages; 4) erred in denying Stone's motion to treat the allegations in her complaint as a claim for violation of KRS 403.300 and erred in its refusal to offer instructions on the same; 5) erred in its refusal to admit into evidence the custodial report of Glass, as well as Glass's underlying notes and data; 6) erred in its finding that Stone was not entitled to taxable costs; and 7) erred in denying Stone's motion for recusal. On cross-appeal, Glass argues, among other things, that as a court-appointed social worker, she was entitled to quasi-judicial immunity from suit. Therefore, Glass argues that the trial court erred by denying her motion for directed verdict and not giving her immunity. We agree that Glass was entitled to immunity.

■ It has long been the established rule that a witness, even if he knowingly gives false testimony, is entitled to absolute immunity from civil damages. *Lawson v. Hensley*, Ky.App., 712 S.W.2d 369 (1986). It is clear, therefore, that Glass is

immune from suit arising from her testimony in court. The issue presented in this case is, however, whether a social worker appointed by the court to perform a custody evaluation can, nevertheless, be sued for professional malpractice or outrageous conduct with regards to the procedures she used which gave rise to the testimony given in court.

Kentucky recognizes the concept of quasi-judicial immunity. *Dugger v. Off 2nd, Inc.*, Ky.App., 612 S.W.2d 756 (1980). However, Kentucky case law does not address the issue of quasi-judicial immunity for social workers who provide custody evaluations. Other jurisdictions have addressed this issue, and differ as to whether persons appointed by the court to perform custody evaluations are entitled to such immunity. For example, in *Elling v. Graves*, 94 Ohio App.3d 382, 640 N.E.2d 1156 (1994), a husband sued a psychologist who was appointed by the court to perform psychological evaluations of the parties, alleging that the psychologist's negligence in performing the evaluations resulted in an award of custody of the children to the wife. The Ohio Court of Appeals stated that the appellant could not pursue a civil action based upon the statements made by the psychologist in court, or in his report, because the statements made in the report and in the testimony were part of and relevant to a judicial proceeding, and therefore protected by absolute immunity. However, the Court stated the psychologist could be held liable for damages on a theory akin to malpractice for failure to conduct an adequate and complete examination. *Id.* at 1159.

A different result was reached by the Utah Supreme Court in *Parker v. Dodgion*, 971 P.2d 496 (Utah 1998). In *Parker*, a father brought a negligence action against a court-appointed psychologist. The parties were involved in a continuing custody and visitation dispute concerning their daughter. The court appointed a psychologist to perform evaluations of the parties, to provide the court with a report of his findings, and to make recommendations as to what custody arrangements would be in the child's best interests. The psychologist recommended that the father not be given custody or visitation because he fit the profile of a sexual abuser. The father filed a complaint against the psychologist, alleging that as a result of the psychologist's negligent evaluation, he suffered various injuries, including monetary damages, loss of custody, and emotional distress. The father alleged that because the psychologist negligently administered the tests, he was mistakenly taken to fit the profile of a sexual abuser.

The Utah Supreme Court, in determining that the psychologist was entitled to quasi-judicial immunity, reasoned as follows:

> The question we must answer, then, is whether a psychologist, appointed by the court to assist it in making a custody determination, performs a function integral to the judicial process. In applying the functional approach to determining immunity questions, "[t]he question is whether the activities undertaken by the party are 'functions to which the reasons for absolute immunity apply with full force.'" *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex.Ct.App.1996) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

> When a court appoints a psychologist to assist it in making a custody determination, the court is depending upon that individual to exercise discretionary judgment to render an evaluation and make a recommendation. The exercise of discretionary judgment is a hallmark of a position functionally comparable to that of a judge. See *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) ("When judicial immunity is extended to

officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as part of their function.").  Furthermore, in conducting such evaluations, the psychologist is essentially acting as a neutral fact-finder for the court.  Fact-finding is an integral part of the judicial process and a function naturally associated with judges and juries, both of whom are granted immunity from suit.

In addition, courts that have addressed this issue have uniformly held that psychologists appointed by the court to conduct psychological evaluations of parties involved in custody disputes perform a function integral to the judicial process and are therefore immune from suit.  (Citations omitted).  Several reasons support this conclusion.  First, if these individuals are subject to suit, they will be much less willing to serve the court in such a capacity.  Second, a psychologist who agrees to fill the role of court-appointed evaluator will be less likely to offer the disinterested, objective opinion the court seeks in making such an appointment if he or she is subject to suit.  In light of the foregoing, we conclude that the functions served by court-appointed psychologists conducting evaluations and making recommendations regarding custody are integral to the judicial process.  Therefore, such individuals are entitled to quasi-judicial immunity.

*Id.* at 498–99.  *See also, Lythgoe v. Guinn,* 884 P.2d 1085 (Alaska 1994) (Court-appointed psychologist acting as independent custody investigator in divorce proceeding sued for negligence and intentional torts by mother when sole custody was given to father.  Court held that psychologist entitled to absolute quasi-judicial immunity because she performed function intimately related to the judicial process.  Court noted that most other courts have granted quasi-judicial immunity to psychologists performing this type of function.)

Although Kentucky has not addressed the issue of quasi-judicial immunity for court-appointed custodial evaluators, in *Horn v. Commonwealth,* Ky., 916 S.W.2d 173 (1995), the Kentucky Supreme Court did extend quasi-judicial immunity to a court-designated worker (CDW) who had transported a juvenile to a detention center.  The CDW failed to advise the detention center officials of the juvenile's suicidal tendencies.  Shortly after being placed in an isolated cell, the juvenile attempted to commit suicide, and was left severely brain damaged.  The juvenile's parents subsequently brought a negligence claim against the CDW. The Court, noting the "totality of [the CDW's] function as a court designated worker" decided that she was protected by quasi-judicial immunity as she was acting within the scope of her employment and under the direction of a judge of the court.  *Id.* at 176.

Following the decision of the Kentucky Supreme Court in *Horn,* we believe also that court-appointed custodial evaluators should be entitled to quasi-judicial immunity.  We agree with the aforementioned analysis of the Utah Supreme Court in *Parker* that a court-appointed psychologist performing a custodial evaluation acts as a fact-finder for the court, and is an integral part of the judicial process, as much, if not more so than the court-designated worker in *Horn.* Therefore, we adjudge that Glass was entitled to quasi-judicial immunity, and as such the trial court erred in denying Glass's motion for directed verdict.  It follows that the arguments raised by Stone in her appeal and the remaining arguments raised by Glass in her cross-appeal are moot.

For the aforementioned reasons, the judgment of the Fayette Circuit Court is reversed and remanded for an order of dismissal.

ALL CONCUR.