David P. SANGSTER, M.D., Appellant

v.

KENTUCKY BOARD OF MEDICAL LICENSURE; Preston P. Nunnelley, M.D.; Donald J. Swikert, M.D.; Randle C. Gibson, D.O.; Susan M. Berberich, M.D.; C. William Briscoe, M.D.; Mickey D. Anderson, M.D.; Uday V. Dave, M.D.; Russell L. Travis, M.D.; Tamella B. Cassis, M.D.; Linda A. Mumford, M.D.; Justice (Ret.) J. Wil-

liam Graves; Brianna D. Legg; Thangam Rangaswamy, Ph.D.; William D. Hacker, M.D.; Boyd R. Buser, D.O.; Edward C. Halperin, M.D.; Emory Wilson, M.D.; and Frederick C. Debeer, M.D., Appellees.

No. 2012–CA–001831–MR.

Court of Appeals of Kentucky.

June 20, 2014.

Case Ordered Published by Court of Appeals Aug. 1, 2014.

Discretionary Review Denied by Supreme Court March 25, 2015.

J. Fox DeMoisey, Louisville, KY, for Appellant.

Leanne K. Diakov, Louisville, KY, for Appellees.

Before ACREE, Chief Judge; JONES and MOORE, Judges.

## OPINION

MOORE, Judge:

David Sangster appeals a judgment of the Jefferson Circuit Court dismissing his civil rights action against the above-captioned appellees (*i.e.,* the Kentucky Board of Medical Licensure and its members in their individual capacities). Upon review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On August 2, 2010, the Kentucky Board of Medical Licensure (KBML) entered an administrative order indefinitely restricting David Sangster's license to practice medicine. In particular, the order prohibited Sangster from performing any act constituting the "practice of medicine" as the term is defined in Kentucky Revised Statutes (KRS) 311.550(10); it provided that the KBML retained the sole discretion to grant any petition to amend or terminate the order of restriction; and, assuming the KBML granted any such petition, the order also provided that Sangster's reinstatement to the practice of medicine would be subject to certain conditions, including his payment of $52,594.52 in costs attributable to his disciplinary proceedings.

The basis of Sángster's appeal stems from an action he filed in Jefferson Circuit Court nearly one year later regarding the aforementioned order and the disciplinary proceedings that accompanied it. Essentially, Sangster asserted that the KBML's order was 1) the product of the KBML's fraud and misconduct involving its administration of its authorizing legislation and the provisions of KRS 13B.005 *et seq.;* 2) in violation of constitutional or statutory provisions; 3) in excess of the statutory authority of the KMBL; 4) without support of substantial evidence on the whole record; 5) arbitrary, capricious, or characterized by abuse of discretion; 6) based on ex parte communications which substantially prejudiced his rights and likely affected the outcome of his disciplinary pro-

ceedings; and 7) affected by a failure of the hearing officer conducting the proceeding to be disqualified due to bias.

Sangster's action was not for the judicial review of administrative action pursuant to KRS 13B.150. When he filed this action, Sangster already had another action pending before another court in Jefferson Circuit Court filed pursuant to that statute, and that action also relied upon roughly the same allegations.[1] To the contrary, Sangster's subsequent action relied upon these allegations to support a 42 United States Code (U.S.C.) § 1983[2] claim for violations of procedural due process, in which he asked for monetary damages and injunctive relief against the KBML and its members in their individual capacities.

Rather than answering Sangster's complaint, the above-captioned appellees filed a Kentucky Rules of Civil Procedure (CR) 12.02(f) motion to dismiss. Specifically, the KBML asserted immunity from suit based upon the Eleventh Amendment of the United States Constitution, whereas the members of the KBML, who had been sued in their individual capacities, asserted absolute quasi-judicial immunity. Thereafter, the circuit court granted the appellees' motion and dismissed Sangster's claims for monetary relief on both bases.

The circuit court further dismissed Sangster's claim for injunctive relief after determining that Sangster had failed to articulate in his complaint how the KBML violated any of his federally protected procedural due process rights. This appeal followed. Additional facts will be discussed as they become relevant to our analysis below.

## ANALYSIS

■ Sangster puts forth three arguments in his brief respectively titled "the individual board members are not entitled to absolute immunity," "absolute immunity for the adjudicative function is not available under these circumstances," and "qualified immunity under KRS 311.603 is not available' to the concerned KBML members." The thrust of his arguments is that his 42 U.S.C. § 1983 actions against the KBML and its members in their individual capacities for monetary damages should not have been dismissed on immunity grounds.[3] The question of immunity is a matter of law which this Court reviews de novo. *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky.2006); *Estate of Clark ex rel. Mitchell v. Daviess County*, 105 S.W.3d 841, 844 (Ky.App.2003).

1. It appears that Sangster's action for judicial review, *KBML v. David P. Sangster, M.D.*, 10–CI–006159, remains pending before the Jefferson Circuit Court as of the date of this opinion.

2. 42 U.S.C. § 1983 provides civil recourse for violations of protected rights. In relevant part, § 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, [or] custom, ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

   equity, or other proper proceeding for redress....

3. Sangster's arguments on appeal are limited to whether the circuit court erred in finding the KBML and its individuals immune to suit. The circuit court did not dismiss Sangster's claim for injunctive relief under 42 U.S.C. § 1983 on the basis of any form of immunity, and Sangster's brief does not include any argument regarding the propriety of the circuit court's decision to dismiss his claim for prospective injunctive relief. Therefore, we deem this argument waived. *See, e.g., Osborne v. Payne*, 31 S.W.3d 911, 916 (Ky.2000) ("Any part of a judgment appealed from that is not briefed is affirmed as being confessed.").

■ As it relates to Sangster's 42 U.S.C. § 1983 claim against the KBML for monetary relief, we agree with the circuit court's decision to dismiss. However, it was unnecessary for the circuit court to even reach the issue of whether the KBML was entitled to any form of immunity because Sangster's claim failed for a more basic reason: the KBML is a state agency,[4] and states, state agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

In rebuttal, Sangster points to KRS 311.603, which he asserts is an avenue for holding the KBML liable for monetary damages under 42 U.S.C. § 1983. It provides:

> There shall be no monetary liability on the part of, and no cause of action for damages shall arise against the board, any current or former member, officer, administrator, staff member, committee member, representative, agent, consultant, or employee of the board, either as a part of the board's operation or as an individual, as the result of any act, omission, proceeding, conduct, or decision related to his official duties undertaken or performed within the scope of the function of the board, except where actual malice is shown or willful misconduct is involved.

As it goes, Sangster's theory is that this Kentucky statute effectively expands the scope of a federal 42 U.S.C. § 1983 action to include the KBML in instances where the KBML's offending conduct is outside its operation, unrelated to the scope of its function, or indicative of actual malice or willful misconduct.

Even if this were a viable interpretation of KRS 311.603, however, Sangster overlooks that under the United States Supreme Court's holding in *Will*, a state and its agencies cannot be sued under section 1983 even if the state consents because it is powerless to rewrite the congressional definition of "person." The manner in which we should view federal causes of action in state courts was specifically stated in *Howlett v. Rose*, 496 U.S. 356, 375–76, 110 S.Ct. 2430, 2442–2443,110 L.Ed.2d 332 (1990):

> The elements of, and the defenses to, a federal cause of action are defined by federal law. *See, e.g., Monessen Southwestern R. Co. v. Morgan*, 486 U.S. 330, 335 [, 108 S.Ct. 1837, 100 L.Ed.2d 349] (1988), *Chesapeake & Ohio R. Co. v. Kuhn*, 284 U.S. 44, 46–47 [, 52 S.Ct. 45, 76 L.Ed. 157] (1931). A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability. *Moor v. County of Alameda*, 411 U.S. 693, 698–710 [, 93 S.Ct. 1785, 36 L.Ed.2d 596] (1973). Since this Court has construed the word "person" in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant.

This federal rule was restated in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69, 117 S.Ct. 1055, 1069–70, 137 L.Ed.2d 170 (1997), as follows:

> We have held, however, that § 1983 actions do not lie against a State. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 [, 109 S.Ct. 2304, 105 L.Ed.2d 45] (1989). Thus, the claim for relief the Ninth Circuit found sufficient to overcome mootness was nonexistent. The barrier was not, as the Ninth Circuit

---

4. *See, e.g.,* KRS 311.530.

supposed, Eleventh Amendment immunity, which the State could waive. The stopper was that § 1983 creates no remedy against a State.

■ This, in turn, leads to a discussion of Sangster's 42 U.S.C. § 1983 claim for monetary relief against the KBML board members in their individual capacities. Sangster argues that it was error for the circuit court to dismiss this claim on the basis of absolute quasi-judicial immunity for two reasons.

First, Sangster argues that Kentucky (*i.e.*, KRS 311.603) has abrogated any form of immunity to a 42 U.S.C. § 1983 suit for offending conduct of individual board members that is outside the operation of the KBML, unrelated to the scope of its function, or indicative of actual malice or willful misconduct. As before, however, Sangster overlooks that a 42 U.S.C. § 1983 suit is a *federal* cause of action. It was the decision of *Congress* to provide certain forms of absolute and qualified immunity to 42 U.S.C. § 1983 claims. *Howlett*, 496 U.S. at 383, 110 S.Ct. at 2446–2447. Kentucky has no authority to override it. *See id.* at 378, 110 S.Ct. at 2444 ("Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.") (citing *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985)). As such, irrespective of KRS 311.603, "[t]he elements of, *and the defenses to*, a federal cause of action are defined by federal law," *Howlett*, 496 U.S. at 375, 110 S.Ct. at 2442 (emphasis added), not state law.

Next, Sangster argues that federal law and precedent interpreting 42 U.S.C. § 1983 would not accord the individual KBML board members absolute quasi-judicial immunity from suit. We disagree.

■ As a general matter, absolute judicial immunity and absolute quasi-judicial immunity apply to 42 U.S.C. § 1983 claims for monetary relief. In *Quatkemeyer v. Kentucky Bd. of Medical Licensure*, 506 Fed.Appx. 342 (6th Cir.2012),[5] the Federal Court of Appeals for the Sixth Circuit explained:

> Absolute immunity against suits for money damages is "well established" for judges, and such immunity has also been extended to non-judicial officers performing "quasi-judicial" duties. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994); *see also Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1108 (9th Cir.1987) ("Quasi-judicial immunity, like judicial immunity, derives historically from the recognition that participation in the court system raises a significant risk of 'entanglement in vexatious litigation.'") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 521, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847. "The Supreme Court has endorsed a 'functional approach in determining whether an official is entitled to absolute immunity. Under this approach, a court 'looks to' the nature of the function per-

5. In accordance with Federal Rules of Appellate Procedure (FRAP) 32.1, "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished' ... and (ii) issued after January 1, 1997." While Kentucky courts are not bound by FRAP 32.1, the federal judiciary has determined that all of its opinions rendered after January 1, 1997, have equally persuasive import without regard to their designation as unpublished. We should take no less a view of those opinions.

formed, not the identity of the actor who performed it.'" *Collyer v. Darling,* 98 F.3d 211, 221 (6th Cir.1996) (citation omitted) (quoting *Bush,* 38 F.3d at 847). The party claiming absolute immunity bears the burden of establishing a justification for that immunity. *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993); *Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). To determine whether the doctrine of judicial immunity applies to officials other than judges, a court must determine whether performance of a function requires exercise of discretionary judgment. *Antoine,* 508 U.S. at 436, 113 S.Ct. 2167; *see also Imbler v. Pachtman,* 424 U.S. 409, 422–24, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

The Supreme Court has ruled upon the applicability of quasi-judicial immunity to state agencies:

> Because the legal remedies already available to the defendant in [an agency enforcement] proceeding provide sufficient checks on agency zeal, we hold that those [agency] officials [who perform certain functions analogous to those of a prosecutor and] who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Butz v. Economou,* 438 U.S. 478, 516, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

*Id.* at 346.

*Quatkemeyer* also determined that federal law accords the individual members of the KBML immunity for any quasi-judicial acts taken within the function of their positions:

> It is undisputed that the Kentucky Board of Medical Licensure is a state agency. Previously, *Butz* has been ap-

plied to medical licensing boards, granting the members of the boards absolute immunity when sued for damages in their individual capacity. *See Watts v. Burkhart,* 978 F.2d 269 (6th Cir.1992); *Bettencourt v. Bd. of Registration in Med. of Mass.,* 904 F.2d 772 (1st Cir. 1990); *Horwitz v. State Bd. of Med. Exam'rs of Colo.,* 822 F.2d 1508 (10th Cir.1987). Pursuant to the "functional" approach that was adopted in *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the determination is centered upon the action of the individual. As explained in *Bush:* "a prosecutor who undertakes acts in the preparation or initiation of judicial proceedings is entitled to absolute immunity. On the other hand, when a prosecutor performs administrative acts unrelated to judicial proceedings, qualified immunity is all that is available." 38 F.3d at 847 (citations omitted). Thus, while members of state medical boards may receive immunity, it is not presumed merely because they are members of those boards.

> The members of the Kentucky Board of Medical Licensure exercise the requisite adjudicatory functioning for quasi-judicial immunity. The Board exercises authority over medical practitioners in Kentucky and has authority to issue subpoenas, conduct various levels of inquiries, make findings and issue different orders. *See* KRS § 311.591. By allowing its determination to be reviewed by the courts, rather than another agency body or third party arbitrator, the Board provides one who is dissatisfied ample opportunity to seek redress. *See* KRS § 311.593.

*Id.*

Sangster argues that the KBML does not have the appropriate safeguards that were present in *Watts* and, therefore, pur-

suant to *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), absolute immunity does not exist for its members in their individual capacities. This argument was offered and rejected in *Quatkemeyer*. And, because we agree with the reasoning of that case, we adopt it:

> In *Watts*, a physician filed a § 1983 action against the members of the Tennessee Board of Medical Examiners individually for damages based upon violations of due process and equal protection. 978 F.2d at 271–72. Having found it persuasive that all members of the Tennessee Board were physicians, we determined the members were "independent professionals" entitled to quasi-judicial immunity and reversed the district court decision. *Id.* at 274, 276.

In *Cleavinger*, the Supreme Court determined that disciplinary committee members lacked the independence that characterizes judges and therefore were not entitled to quasi-judicial immunity. 474 U.S. at 203, 106 S.Ct. 496. The committee in *Cleavinger* was composed of Bureau of Prison employees who were direct subordinates of the warden who reviewed their decisions, and were "under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee." *Id.* at 204, 106 S.Ct. 496. They were not impartial and the hearing body was not detached or neutral. *Id.*

While it is correct to say neither the facts nor the statutory guidelines in the instant case are identical to those in *Watts*, this case is far more analogous to *Watts* than *Cleavinger*. Here, the Board is comprised of independent professionals whom were not direct subordinates of the person or entity that appoints them. Further, no party alleges its decisions were reviewed by the Governor. Also, the Board is comprised of

fifteen members: eleven are licensed physicians; one is an osteopathic physician; and the remaining three are representatives of healthcare consumer organizations who are not associated with or financially interested in the business regulated. *See* KRS § 311.530.[FN]

[FN] KRS § 311.530(2) requires that the Board consist of fifteen members, "including the commissioner of public health, the dean of the University of Kentucky College of Medicine, the vice dean for clinical affairs of the University of Louisville School of Medicine, the dean of the University of Pikeville School of Osteopathic Medicine, and eleven (11) members appointed by the Governor." Of the Governor's appointees, § 311.530(3) provides that:

(a) One (1) member shall be a licensed osteopathic physician and shall be appointed from a list of three (3) names submitted by the Kentucky Osteopathic Association;

(b) Seven (7) members shall be licensed medical physicians and may be appointed from a list of three (3) names submitted for each position by the Kentucky Medical Association. In making appointments under this paragraph, the Governor shall ensure that the physician members represented different specialties from a broad cross section of the medical profession; and

(c) Three (3) members shall be citizens at large who are representatives of any recognized consumer advocacy groups with an interest in the delivery of health care and are not associated with or financially interest in the practice or business regulated.

The board in *Watts* consisted of five members whom were required by stat-

ute to be professionals. *Watts,* 978 F.2d at 275. However, the slight differences in the makeup of the Board in the instant case and *Watts* do not result in a denial of immunity as long as the Board is made up primarily of professionals and required to be independent.

Sangster argues that the individual KBML members are not entitled to quasi-judicial immunity for several other reasons, but many of these reasons were also rejected in *Quatkemeyer.* First, he alleges that the KBML did not adequately apprise him of its charges relating to his purported misconduct prior to his disciplinary proceeding. "However, in *Watts,* the plaintiff's 'due process claim rested on allegations that the proceedings before the board were defective because, among other things, the charges had not been stated with sufficient specificity[.]'" *Quatkemeyer,* 506 Fed.Appx. at 348 (citing *Watts,* 978 F.2d at 272).

Next, Sangster alleges that certain findings within the KBML's order misinterpret the evidence of record, are not supported by substantial evidence, or were based upon evidence that should have been excluded; the legal conclusions within the KBML's order misapply and misinterpret the applicable statutes and the KBML's own standards for physician conduct; the hearing officer's recommended order failed to include a "recommended disposition" as required by KRS 13B.110(1); and, that the KBML failed to adequately review the record before ultimately adopting the hearing officer's recommended order. However, [Sangster's] argument is misplaced. The challenged acts he describes, such as relying upon wrong analyses and false allegations, are prosecutorial in nature. If [Sangster's] contention is that the [KBML] failed to properly consider the evidence, such failure would not negate immunity. The function and action

of the [KBML] was prosecutorial or adjudicatory in nature, regardless of how ineffectively the [KBML] may have performed it.

*Id.* at 347.

█ Finally, Sangster argues that the individual KBML members are not entitled to absolute quasi-judicial immunity because they were biased against him, the hearing officer was biased against him, and because the hearing officer appointed by the KBML in the instant case was a lawyer, rather than a medical professional. However, it is the very function of absolute immunity to defeat a suit from the outset and immunize even capricious decisions motivated by prejudice, bias, or greed. *See Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). *See also Pierson v. Ray,* 386 U.S. 547, 553, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967) (noting absolute immunity applies even when judge is accused of acting maliciously and corruptly); *Bradley v. Fisher,* 80 U.S. 335, 346, 13 Wall. 335, 20 L.Ed. 646 (1871) (If an act is judicial in character and within the court's jurisdiction, "the defendant cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.") And in any event, "The fact that the Hearing Officer in the instant case was a lawyer appointed by the [KBML] does not render him biased or the procedural safeguards inadequate." *Quatkemeyer,* 506 Fed. Appx. at 348.

In sum, we agree with *Quatkemeyer* in that the KBML's authorizing legislation and procedures adequately protect "the policy interests identified in *Watts.* The [KBML]'s position is akin to that of judges or prosecutors, the potential for vexatious lawsuits is great, and sufficient safeguards exist to protect a physician's constitutional

rights." *Id.* at 348–349 (citations omitted). Moreover, taking the allegations in his complaint as true, Sangster has merely asserted that the individual KBML members acted with bad faith or malice, rendered an incorrect decision, took action in excess of their authority, or committed grave procedural errors over the course of his disciplinary proceedings—none of which are adequate to vitiate absolute immunity from suit. *Stump,* 435 U.S. at 356 and 359, 98 S.Ct. at 1104–1105 and 1106.[6]

### CONCLUSION

For the foregoing reasons, the Court finds that absolute quasi-judicial immunity protects the individual KBML members from Sangster's claims against them in their individual capacities, and that Sangster failed to assert a cognizable cause of action against the KBML as a state agency. Therefore, the Jefferson Circuit Court is affirmed.

ALL CONCUR.

---

**6.** To be clear, the Supreme Court has held that absolute judicial immunity (and thus by extension absolute quasi-judicial immunity) is generally overcome in only two sets of circumstances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (citing *Forrester v. White,* 484 U.S. 219, 227–229,108 S.Ct. 538, 544–545, 98 L.Ed.2d 555 (1988)); and *Stump,* 435 U.S. at 360, 98 S.Ct. at 1106.

"Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12, 112 S.Ct. at 288 (citing *Stump,* 435 U.S. at 356–357, 98 S.Ct. at 1104–1105; and *Bradley v. Fisher,* 80 U.S. 335, 351). Because the present case implicates neither of these exceptional circumstances, the individual members of the KBML are entitled to absolute quasi-judicial immunity, and all monetary claims against them must therefore be dismissed.