RENDERED: JUNE 25, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0881-MR

G. KEITH GAMBREL AND THE
GAMBREL FIRM, LLC                                                APPELLANTS


                    APPEAL FROM CAMPBELL CIRCUIT COURT
v.          HONORABLE JULIE REINHARDT WARD, JUDGE
                         ACTION NO. 19-CI-00927


PAUL CROUSHORE, IN HIS
CAPACITY AS NEXT FRIEND OF
EACH OF SOPHIA VILLARREAL, A
MINOR AND SPENCER
VILLARREAL, A MINOR[1]                                              APPELLEE


                              OPINION
                    REVERSING AND REMANDING

                         ** ** ** ** **

BEFORE: ACREE, DIXON, AND McNEILL, JUDGES.

ACREE, JUDGE: G. Keith Gambrel appeals the Campbell Circuit Court's June

18, 2020 order denying his motion to dismiss a legal malpractice claim against

---

[1] In the notice of appeal, the children's last name, Villarreal, is incorrectly spelled "Villareal." We will use the correct spelling in this Opinion. An order was entered on June 10, 2021, to reflect the correct spelling of the children's name.

him. His motion to dismiss was based on his claim of quasi-judicial immunity for actions he took as a court-appointed guardian *ad litem* ("GAL"). Upon careful consideration, we conclude Gambrel was cloaked with absolute quasi-judicial immunity and reverse and remand with instructions to dismiss the action.

## BACKGROUND AND PROCEDURE

The genesis of this matter is a custody dispute between Alexandra Lawson ("Mother") and her former husband, Spencer Villarreal ("Father") relative to their two minor children. The family resided in Indiana when a court of that state entered the parties' divorce decree, including the custody determination.[2] Subsequent to the divorce, the parties independently relocated with their children to Campbell County, Kentucky.

In May 2014, Mother registered the Indiana decree and custody determination with the Campbell Circuit Court and simultaneously sought an order authorizing the relocation of the children to Mississippi. Father opposed the motion. Pursuant to FCRPP[3] 6(2)(e), the court appointed Gambrel as GAL of the two children. The circuit court granted Mother's motion and authorized the relocation.

---

[2] The parties were awarded joint custody with Mother named as the children's primary custodial parent.

[3] Family Court Rules of Procedure and Practice.

-2-

In 2018, Father moved to modify the custody agreement. He asked the court to re-designate him as the children's primary custodial parent and for return of the children to Campbell County; he alleged Mother failed to act in good faith in co-parenting the children. Again, Gambrel served as the court-appointed GAL. Gambrel argued that re-designating Father as the primary residential custodian and relocating the children to Campbell County was in the children's best interests. (Trial Record "T.R." at 76). In exercising his statutory duty, Gambrel filed motions and introduced evidence supporting that position. (T.R. at 263). He noted that neither child voiced a preference between their parents as primary residential custodian. (T.R. at 76). In addition, he presented evidence that Mother had not made good decisions regarding the son's education and that the schools in Campbell County would better accommodate his educational needs.[4] The circuit court granted Father's motion.

Mother filed emergency motions for reinstatement as the children's primary residential parent alleging Gambrel committed malpractice. She sought Gambrel's removal as GAL. The motions were denied. (T.R. at 146-47).

Paul Croushore, in his capacity as next friend of the Villarreal children, filed this action against Gambrel claiming he committed legal negligence

---

[4] The son has dyslexia, dysgraphia, and attention deficit hyperactivity disorder. (T.R. at 73).

in the way he performed his duties as GAL.[5]  In response, Gambrel filed a motion

pursuant to CR[6] 12.02(f) to dismiss the case for failure to state a claim upon which

relief may be granted, asserting he was cloaked with absolute quasi-judicial

immunity.  The circuit court denied the motion.  "[A]n order denying a substantial

claim of absolute immunity is immediately appealable even in the absence of a

final judgment."  *Maggard v. Kinney*, 576 S.W.3d 559, 564 (Ky. 2019) (internal

quotation marks and citation omitted).  Gambrel then brought this appeal.

## STANDARD OF REVIEW

"[A] court should not grant . . . a motion [to dismiss for failure to state

a claim] 'unless it appears the pleading party would not be entitled to relief under

any set of facts which could be proved . . . .'"  *Fox v. Grayson*, 317 S.W.3d 1, 7

(Ky. 2010) (quoting *Pari-Mutuel Clerks' Union of Kentucky, Local 541, SEIU,*

*AFL-CIO v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977)).  Such a

motion "admits as true the material facts of the complaint."  *Id.* (quoting *Upchurch*

---

[5] The complaint alleged Gambrel failed to exercise the requisite degree of care and skill by:  (1) failing to advise the children concerning his role in the custody proceedings; (2) failing to inform the children concerning all significant developments during the course of the proceedings; (3) failing to advise the children concerning material options they had in the custody proceedings and their legal ramifications; (4) failing to advocate to the circuit court the wishes of the children; (5) making decisions for what he thought was in the best interest of the children rather than what they wanted, without disclosing or discussing with the children the differences in opinions; (6) failing to seek instruction from each child on matters as to which each of them has the right to determine the goals and objectives of Gambrel's representation of them; and (7) by confusing his role as GAL with that of a friend of the court.

[6] Kentucky Rules of Civil Procedure.

*v. Clinton County*, 330 S.W.2d 428, 429-30 (Ky. 1959)). Immunity is purely a question of law and our review is *de novo*. *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 137 (Ky. 2018), *reh'g denied* (Mar. 14, 2019).

## ANALYSIS

This case presents an issue of first impression in Kentucky: whether court-appointed guardians *ad litem* enjoy absolute quasi-judicial immunity from legal malpractice claims arising from their role in child custody proceedings. Based on applicable Kentucky law and public policy, we conclude they do.

"Absolute immunity against suits for money damages is 'well established' for judges, and such immunity has also been extended to non-judicial officers performing 'quasi-judicial' duties." *Sangster v. Kentucky Bd. of Med. Licensure*, 454 S.W.3d 854, 858 (Ky. App. 2014) (citations omitted). Kentucky extends quasi-judicial immunity "to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.*; *see also Stone v. Glass*, 35 S.W.3d 827, 829 (Ky. App. 2000). To determine quasi-judicial immunity, we apply a "functional approach" and "'look[ ] to' the nature of the function performed, not the identity of the actor who performed it." *Sangster*, 454 S.W.3d at 858-59 (citation omitted). This doctrine applies to court officers when working within the scope of the court's appointment. *See Horn by Horn v. Commonwealth*, 916

S.W.2d 173, 176 (Ky. 1995) ("[Q]uasi-judicial immunity attaches to the CDW when working within her capacity as a court designated worker.").

The circuit court, in denying Gambrel his claimed immunity, relied on our Supreme Court's decision in *Morgan v. Getter*, 441 S.W.3d 94 (Ky. 2014). However, *Morgan* says nothing directly relating to the question of immunity, whether that immunity applies to a GAL, a "friend of the court," or any other court-appointed officer or investigator.

Although *Morgan* distinguished the role of a GAL in custody proceedings from that of "court investigators," it decided only whether due process requires a court to permit a litigant to cross-examine a court-appointed officer who submits a report to the court. *Id.* at 112 ("parties' right to due process includes the right to cross-examine the authors, including so-called GALs, of evidentiary reports upon which the fact finder is entitled to rely"). In that context, the Court concluded a friend of the court is "a child's representative appointed as an officer of the court to investigate the child's and the parents' situations, to file a report summarizing his or her findings, and to make recommendations as to the outcome of the proceeding[.]" *Id.* at 111. By contrast, a GAL is "a child's representative appointed to participate actively as legal counsel for the child, to make opening and closing statements, to call and to cross-examine witnesses, to make evidentiary objections and other motions, and to further the child's interest in expeditious, non-

-6-

acrimonious proceedings[.]" *Id.* The lesson of *Morgan* for bench and bar is that, to avoid implicating the due process right of cross-examination, a GAL "should *not* file reports, testify, make recommendations, or otherwise put his own or her own credibility at issue." *Id.* at 114 (emphasis original).

Extrapolating *Morgan*, the circuit court in the instant case concluded as follows:

> Here, the Defendant, Gambrel, was appointed and clearly served as legal counsel to the children rather than serving as a friend of the court investigator. Gambrel served as an advocate for the best interest of the children by filing motions and introducing evidence on behalf of his clients, whereas the Family Court judge served as the fact-finder and decided the law that governed those facts. Moreover, the acts by Gambrel on which the children base their claims of malpractice involved no non-discretionary functions performed at the direction of a judicial officer. Discretionary actions are those that involve personal deliberation, decisions, and judgment, and the role of counseling a client on the law and the client's rights clearly involves the exercise of discretion. *Jacobi v. Holbert*, 553 S.W.3d 246, 262 (Ky. 2018). The Defendant was appointed to provide legal counsel for and to advocate on behalf of the children. Thus, Gambrel's role was vastly different from that of the Family Court judge and did not involve discretionary acts or conduct like those a judge performs.
>
> . . . .
>
> . . . *Morgan* . . . makes clear that the role of a GAL is to serve as legal counsel for the children and to advocate for their best interests. Therefore, the Court finds that the Defendants do not qualify for quasi-judicial, nor any other form of immunity.

(T.R. at 263-64).  We find that the circuit court erred when it concluded a GAL whose duty it is to advocate for the children's best interests is, *ergo*, disqualified from claiming quasi-judicial immunity.

*Morgan* is not dispositive of the immunity issue.  The question is not whether Gambrel could have been cross-examined despite not filing any report with the family court.  Gambrel's appeal requires this Court to answer a different question – whether he is immune from suit, a question ultimately answered by considerations of public policy, not the same principles of due process that guided the Supreme Court in *Morgan*.

We acknowledge that *Morgan* distinguishes the roles of GALs and court investigators.  However, these distinctions do little to answer the immunity question.  In other words, there is no justification for denying immunity to a court-appointed GAL simply because *Morgan* says the GAL cannot be cross-examined.  After all, neither role – GAL nor "friend of the court" – requires advancing the desires or following directives of children who are the subjects of the legal dispute.

Cases addressing quasi-judicial immunity in other contexts are more helpful than *Morgan*.  For example, cases finding immunity for prosecutors are based on the same fundamental reasoning as must be applied here.  A prosecutor does not act as an investigator for the court, does not report a recommendation of guilt or innocence, and does not engage in fact-finding for the judge.  A prosecutor

is an advocate for the Commonwealth, performing a function independent from, yet integral to, the judicial system. And, "so long as a prosecutor acts within the scope of the duties imposed by law, quasi-judicial immunity is available[.]" *McCollum v. Garrett*, 880 S.W.2d 530, 534 (Ky. 1994).

Like prosecutors, court-appointed GALs have duties that are imposed by law:

> Whether appointed pursuant to this statute or pursuant to a provision of the Kentucky Unified Juvenile Code, the duties of a guardian ad litem shall be to advocate for the client's best interest in the proceeding through which the guardian ad litem was appointed. Without an appointment, the guardian ad litem shall have no obligation to initiate action or to defend the client in other proceedings.

KRS 387.305(5).

Though the circuit court found the GAL's and judge's roles "vastly different," we see a more fundamental distinction between the GAL's advocacy role and that of the parents' lawyers. The latter "shall abide by a client's decisions concerning the objectives of representation . . . ." SCR[7] 3.130(1.2)(a). The GAL has no duty to advocate for the children's wishes; *i.e.*, to abide by their decisions concerning the objectives of the GAL's representation. *Morgan*, 441 S.W.3d at 118. The objective of the GAL's representation is to protect the children from any outcome which, in the estimation of the GAL, is inconsistent with the children's

---

[7] Rules of the Kentucky Supreme Court.

best interests. In this way, the GAL's function and the function of the family court are identical and not "vastly different" at all. Long ago, Kentucky's highest court "established the best interests of the child as the ultimate goal to be achieved" in custody cases. *McCormick v. Lewis*, 328 S.W.2d 415, 416 (Ky. 1959). Determining the best interests of children is a function integral to the judicial system, and a court appoints a GAL for the very purpose, often the sole purpose, of assisting in that function.

The circuit court itself held that the instant "claims of malpractice involved no non-discretionary functions" by the GAL. Certainly, quasi-judicial immunity "applies to officials other than judges" when the court-appointed official performs "a function requir[ing] exercise of discretionary judgment." *Sangster*, 454 S.W.3d at 859. Here, the GAL was sued *because* of his exercise of discretionary judgment and compliance with KRS[8] 387.305(5).

Thus far, we focused on statutory and common law that points the Court in the direction of finding immunity applies here. As noted, however, this is a question of public policy. And, just as sound public policy compels the availability of immunity for prosecutors, public policy compels the conclusion that GALs should be cloaked in absolute quasi-judicial immunity, too.

> The common-law immunity of a prosecutor is based upon
> the same considerations that underlie the common-law

---

[8] Kentucky Revised Statutes.

immunities of judges and grand jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Imbler v. Pachtman*, 424 U.S. 409, 422-23, 96 S. Ct. 984, 991, 47 L. Ed. 2d 128 (1976) (footnotes omitted).

The risk of "harassment by unfounded litigation" is no less for a GAL than for a prosecutor. In turn, without immunity, there is the same possibility that, to avoid the risk of being sued, the GAL will "shade his decisions." These risks have been public policy considerations of courts across the country when considering how they affect the performance of GALs.

After surveying the nations' federal and state courts, the New York Supreme Court, Appellate Division, said: "Most courts that have considered suits by disgruntled parents against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasi-judicial immunity to the attorneys for actions taken within the scope of their appointments[.]" *Bluntt v. O'Connor*, 291 A.D.2d 106, 116, 737 N.Y.S.2d 471 (N.Y. App. Div. 2002)[9]; *see also* LINDA D. ELROD, CHILD CUSTODY PRACTICE AND

---

[9] The New York court, *Bluntt*, 737 N.Y.S.2d at 478-79, cited the following cases: *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989); *Myers v. Morris*, 810 F.2d 1437, 1466 (8th Cir. 1987), *cert. denied*, 484 U.S. 828, 108 S. Ct. 97, 98 L. Ed. 2d 58 (1987), *abrogated on other grounds by*

PROCEDURE, IMMUNITY § 12.11 (2021) ("Absolute immunity [is] necessary to

avoid harassment and intimidation that could bear on the guardian ad litem's

impartiality . . . .").

Even when the expansion of quasi-judicial immunity to non-judges is

criticized, its universal application to GALs in all jurisdictions is stated as a matter

of fact, without further comment. The following is an example:

> For the six circuits with published decisions, the courts have unanimously held that GALs are entitled to absolute judicial immunity for activities within the scope of their appointment. Specifically, the First, Third, Fourth, Sixth, Seventh, and Ninth Circuits have all reached this conclusion. In addition, district-court decisions and state-court decisions in the Second, Fifth, Eighth, Tenth, Eleventh, and District of Columbia circuits are in accord.

---

*Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984); *Perigo v. Wiseman*, 11 P.3d 217, 217-18 (Okla. 2000); *Paige K.B. by Peterson v. Molepske*, 219 Wis. 2d 418, 427, 580 N.W.2d 289, 293 (1998); *Billups v. Scott*, 253 Neb. 287, 293, 571 N.W.2d 603, 607 (1997); *West v. Osborne*, 108 Wash. App. 764, 774, 34 P.3d 816, 822 (2001); *Winchester v. Little*, 996 S.W.2d 818, 827 (Tenn. Ct. App. 1998), *cert. denied*, 528 U.S. 1026, 120 S. Ct. 543, 145 L. Ed. 2d 421 (1999); *Delcourt v. Silverman*, 919 S.W.2d 777, 786 (Tex. App. 1996), *cert. denied*, 520 U.S. 1213, 117 S. Ct. 1698, 137 L. Ed. 2d 824 (1997), *reh'g denied*, 520 U.S. 1283, 117 S. Ct. 2472, 138 L. Ed. 2d 227 (1997); *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 377-378 (Mo. Ct. App. 1993); *Leary v. Leary*, 97 Md. App. 26, 40, 627 A.2d 30, 36 (1993); *Penn v. McMonagle*, 60 Ohio. App. 3d 149, 152, 573 N.E.2d 1234, 1237 (1990), *jurisdictional mot. overruled*, 58 Ohio St. 3d 704, 569 N.E.2d 512 (1991); *Delbridge v. Office of Pub. Defender*, 238 N.J. Super. 288, 299-300, 569 A.2d 854, 860 (1989), *aff'd sub nom. A.D. v. Franco*, 297 N.J. Super. 1, 687 A.2d 748 (1993), *certification denied*, 135 N.J. 467, 640 A.2d 849 (1994), *cert. denied sub nom. Delbridge v. Franco*, 513 U.S. 832, 115 S. Ct. 108, 130 L. Ed. 2d 56 (1994); *cf. Fleming v. Asbill*, 42 F.3d 886, 890 (4th Cir. 1994).

Margaret Z. Johns, *A Black Robe Is Not A Big Tent: The Improper Expansion of Absolute Judicial Immunity to Non-Judges in Civil-Rights Cases*, 59 SMU L. REV. 265, 283-84 (2006) (footnotes citing opinions in each jurisdiction omitted).

We find no merit in Appellee's argument for distinguishing this case from the nationwide unanimity of jurisprudence on this subject. That distinction, says the Appellee, is that "[t]he Villarreal Children decided to bring an action" rather than any disgruntled parent as in all the other cases cited herein. We need not undertake a review of every case to confirm that premise. It is a false one. The fiction or fact that the children, notwithstanding their lack of legal capacity, made such a decision is irrelevant. If a GAL is entitled to immunity, it does not matter who seeks to establish his liability.

A GAL has the same overarching statutory duty in child custody proceedings as a judge – to ensure the best interests of the child are met. GALs are appointed by court order at the behest of the presiding judge or a party. This appointment furthers the judge's duty to determine the best interests of the children by ensuring the court is presented with unbiased evidence in support of those interests, not merely the biased advocacy of the parents.

The same reasoning underlying a judge's entitlement to absolute immunity compels us to extend similar protection to GALs appointed by the court to represent the best interests of children affected by custody disputes. If GALs are

harassed by a disgruntled parent (or by a next friend of that parent's legally incompetent minions, their children), or if they even fear the potential of such litigation, their efforts to advance the children's best interests would always be suspect. *See Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984);[10] *Arsan v. Keller*, 784 F. App'x 900, 908 (6th Cir. 2019).[11] Accordingly, having considered the nature of their function, we conclude GALs perform tasks integral to the judicial process – ensuring the best interests of the child are met – and public policy dictates they should be protected by quasi-judicial immunity.

Finally, we note that there are protections in place against a GAL who fails to diligently and impartially carry out his assigned judicial function. Because a GAL must be a member of the bar, he will be held to the rules of professional

---

[10] A GAL "must act in the best interests of the child he represents. Such a position clearly places him squarely within the judicial process to accomplish that goal. A guardian ad litem must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents. Consequently, a grant of absolute immunity would be appropriate. A failure to grant immunity would hamper the duties of a guardian ad litem in his role as advocate for the child in judicial proceedings." *Kurzawa*, 732 F.2d at 1458.

[11] In *Arsan v. Keller*, 784 F. App'x at 908, the Sixth Circuit held:

> Absolute immunity protects judges from liability for acts performed in their judicial capacity. *See Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985). The Supreme Court has extended this defense — sometimes called "quasi-judicial immunity" — to others "who perform functions closely associated with the judicial process." *Id.* at 200, 106 S. Ct. 496. Guardians *ad litem* are entitled to such immunity when they act within the scope of their roles as "advocate[s] for the child in judicial proceedings." *Kurzawa*, 732 F.2d at 1458. This is because guardians *ad litem* "must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." *Id.* As such, "failure to grant immunity would hamper the duties of a guardian *ad litem* in his role as advocate for the child in judicial proceedings."

conduct except where his conduct is governed by statute rather than rule. *Contrast* KRS 387.305 *with* SCR 3.130(1.2). Next, the GAL is not the final word; ultimately, the court must make the best interests determination and that determination need not be in lock-step with the GAL's view. Lastly, the court oversees the GAL's conduct and may withdraw the appointment *sua sponte* or upon a parent's motion. Such a motion was filed in the underlying action, but it was denied.

## CONCLUSION

Based on the foregoing, we reverse the Campbell Circuit Court's June 18, 2020 order denying Gambrel's motion to dismiss and remand with orders to dismiss the case for failure to state a claim upon which relief may be granted.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Joseph W. Borchelt
Matthew A. Taulbee
Ft. Mitchell, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Joseph W. Borchelt
Ft. Mitchell, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

John J. Mueller
Cincinnati, Ohio